THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GAYLE EUGENE SILER, Defendant-Appellant.

Fifth District   No. 5—84—0643

Opinion filed April 8, 1987.

Randy E. Blue and Kim G. Noffke, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael Kiley, State's Attorney, of Shelbyville (Kenneth R. Boyle, Robert J. Biderman, and Denis M. Ambrose, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Gayle Eugene Siler, was found guilty of one count of child pornography and two counts of indecent liberties with a child after a jury trial held between July 25 and August 3, 1984, in the circuit court of Shelby County. Defendant was sentenced to 15-year terms of imprisonment on each count, with the sentences for the indecent-liberties counts to be served concurrently with each other but consecutively to the child-pornography sentence. Defendant has perfected the instant appeal from his convictions and sentences. We affirm.

Defendant's appointed appellate counsel raises two issues on appeal in defendant's behalf: (1) whether the trial court erred in allowing defendant to represent himself at trial; and (2) whether the trial court should have *sua sponte* declared a mistrial when defendant was unable to conduct proper examination of defense witnesses. Defendant has filed a *pro se* brief raising one additional issue: whether the trial court in sentencing defendant failed to consider that imprisonment might endanger defendant's medical condition. Defendant does not contest the sufficiency of the evidence against him and therefore we need not repeat the details of these offenses.

At his first appearance on December 2, 1983, defendant was advised of the charges against him and of his right to counsel. When defendant expressed his desire to represent himself, the following colloquy occurred:

"THE COURT: Now, is it your intent as of this minute to continue to represent yourself in these proceedings?

DEFENDANT: I hate to repeat myself. I said I would represent myself and that's an affirmative on that.

THE COURT: Now, have you been represented by counsel in other proceedings prior to this one?

DEFENDANT: (Shakes head from side to side.)

THE COURT: You have never been represented by an attorney, is that correct?

DEFENDANT: You got it.

THE COURT: You understand that it is possible that an attorney representing you might be able to do a better job with the case than you yourself might be able to do?

DEFENDANT: You know what B. S. is?

THE COURT: I will take that, Mr. Siler, as an affirmative statement that you wish to represent yourself.

DEFENDANT: I think I would be better off to represent myself and I think we have that clarified, don't we?"

On December 16, 1983, defendant stated to the court: "I will let [the public defender] serve as my mouthpiece on this, ask all the questions that I feel should be brought out in this case. If he ever fails to do so, I would like him to withdraw immediately or I will ask that he be removed. I mean I have had this happen before and I find it much easier to represent myself a lot of times and have in the past." The court then suggested that if the defendant and the public defender did not have a meeting of the minds, that defendant should let the court know.

On January 18, 1984, defendant appeared with the public defender. The court advised defendant of the nature of the charges and the possible sentences. Defendant indicated he understood. The defendant also indicated that he was 39 years of age and that he intended to waive his right to a preliminary hearing. The court explained defendant's right to a preliminary hearing and again advised defendant of the charges and the possible sentences. The court also advised defendant of his rights to a jury trial and to cross-examine witnesses and also his rights against self-incrimination and to a speedy trial. The defendant stated that he understood the court's admonishments. The defendant also stated: "At this time, I definitely want [the public defender] next to me on this."

On May 9, 1984, the public defender filed a motion to withdraw as attorney of record for defendant, alleging that defendant failed to cooperate or correspond with him and that defendant failed to assist in his defense. At a hearing on May 18, 1984, the court denied the motion. Both the public defender and defendant informed the court that defendant wished to represent himself but with the assistance of the public defender "to run errands for him" and to "[f]ile the legal work and stuff like this." When the public defender advised the court that defendant desired to conduct the examination of witnesses, the court inquired of defendant's legal training. The defendant responded that he had handled all his court cases before but that he wasn't a qualified lawyer. Despite the court's warnings of the dangers of representing himself, defendant persisted in his stated desire to represent himself with the public defender as standby counsel to assist him.

At a hearing on motions on July 23, 1984, the public defender presented the defendant's opposition to the State's motion to amend the information, but he made it clear that he was doing so at the

defendant's request. The court warned defendant again of the pitfalls of proceeding *pro se*. The court also warned defendant that he was required to follow proper courtroom decorum.

Defendant filed, *pro se*, a discovery motion, a motion to change the place of trial, a motion to suppress, and a motion to sever some of the charges, which was granted. He also complied with discovery *pro se*.

Jury selection was conducted on July 27, 1984. Both the defendant and the public defender participated in the questioning of the prospective jurors. Defendant elicited information which permitted intelligent exercise of his peremptory challenges, probing areas of potential bias or prejudice. Defendant made two successful *pro se* challenges for cause. However, defendant also attempted to indoctrinate the jury to his side of the case and injected improper comments into his questioning, despite the trial court's admonishments.

During trial defendant cross-examined the three State's witnesses, delivered an opening statement, examined in whole or part eight of the defense witnesses, and gave one-half of his closing argument. The defendant established through the testimony that the camera used to take the pornographic pictures which supported the charges belonged to his sister, who disliked him; the victim sometimes dressed provocatively; the victim never reported the sexual episodes to anyone; the victim was not threatened when she posed for the pictures; and that other persons would have been in the house when the pictures were taken. Some of the witnesses failed to identify the defendant or the victim in some of the pictures. Defendant also examined his therapist, who testified that defendant had been a paraplegic since October 1980 and had only limited use of his arms and hands. The therapist also stated that he did not know whether defendant could hold his arms in a position in order to hold a camera to take a picture of himself. Defense witnesses also testified that defendant's reputation for morality and as a law-abiding citizen was fair.

However, during the trial the court repeatedly warned defendant that his conduct was disruptive, improper, and dilatory. Defendant complained to the jury that he did not have sufficient time or opportunity to prepare for trial. He also injected his own unsworn testimony into his questions and commented upon, repeated, argued with, and criticized witnesses' responses. He repeatedly ignored the court's rulings as to evidentiary objections and courtroom decorum and procedure.

During the third day of trial, when the court was forced to require offers of proof with respect to all defense witnesses, the court

limited the subject areas of examination to those relevant to the trial. The next day the court also required the public defender to ask those questions pertaining to defendant's character because defendant was not able to phrase proper questions to the witnesses. The court also warned defendant that, if defendant continued to inject unsworn testimony into the questions or repeat the witnesses' answers or examine beyond the scope of the offers of proof, the court would either prohibit defendant from calling the witnesses or require the public defender to conduct all the questioning.

Nevertheless, defendant's misconduct continued and the court, over defendant's objection, ordered that the public defender complete the examination of all the remaining witnesses. The public defender had taken an active role in the trial up to this point, with defendant's consent, objecting to questions and testimony, conducting some direct examination, making offers of proof, and arguing motions and proceedings concerning the admission or exclusion of exhibits. After this point, however, the public defender examined the last eight defense witnesses, argued defendant's motion for directed verdicts, and conducted the instruction conference. The defendant was allowed to give a closing argument, which the public defender supplemented.

The jury returned verdicts of guilty on one count of child pornography and two counts of indecent liberties with a child. It returned verdicts of not guilty on one count of child pornography and one count of indecent liberties.

As his first issue on appeal, defendant contends that the trial court "erred in allowing defendant to waive counsel and represent himself at trial."

Initially, we note that this issue was not raised in defendant's written post-trial motion and therefore may be considered as having been waived. (*People v. Friesland* (1985), 109 Ill. 2d 369, 374, 488 N.E.2d 261, 262.) Nevertheless, we will address this contention.

We note that defendant is not contending that he did not effectively waive his sixth amendment right to counsel. (*Cf. People v. Nieves* (1982), 92 Ill. 2d 452, 466, 442 N.E.2d 228, 235 (in which the court stated that where defendant proceeds to trial with standby counsel, admonishments of supreme court rule for waiver of counsel are not necessary).) Instead, defendant claims that "[b]ecause of his physical disability and his limited mental capacity to think rationally and articulate ideas, defendant lacked the ability to assist in his own defense, much less conduct it."

The sixth amendment to the United States Constitution grants to a criminal defendant the right to make a defense *pro se.*

(*Faretta v. California* (1975), 422 U.S. 806, 819, 45 L. Ed. 2d 562, 572, 95 S. Ct. 2525, 2533.) A careful inquiry must be made to determine defendant's ability to conduct his own defense, focusing on his age, level of education, mental capacity, and prior experience with legal proceedings. (*People v. Graves* (1984), 134 Ill. App. 3d 473, 476, 480 N.E.2d 1142, 1144.) To exercise the right to proceed *pro se*, a defendant must knowingly and intelligently waive the benefits of his right to representation by counsel. (134 Ill. App. 3d 473, 476, 480 N.E.2d 1142, 1144.) As noted earlier, defendant does not claim that he did not knowingly and intelligently waive the right to counsel; and the record indicates that defendant's waiver of counsel was in compliance with Supreme Court Rule 401(a) (103 Ill. 2d R. 401(a)). Furthermore, the court was aware of the defendant's age and his ability to speak and conduct his defense rationally and intelligently. The court was also aware that defendant had represented himself previously. We note that one prior instance of defendant's *pro se* representation is the subject of a published opinion. (*People v. Siler* (1980), 85 Ill. App. 3d 304, 406 N.E.2d 891.) We also note that defendant had been admonished repeatedly concerning the nature of the charges, the possible penalties, his right to counsel, and the dangers of *pro se* representation. A defendant need not have the skill and experience of a lawyer in order to competently and intelligently choose self-representation. *Faretta v. California* (1975), 422 U.S. 806, 835, 45 L. Ed. 2d 562, 581-82, 95 S. Ct. 2525, 2541.

The facts and circumstances in the case at bar indicate that defendant was fully informed of the nature of the charges, the possible penalties and his rights, and that he understood them and was aware of the dangers of self-representation. We conclude that the trial court did not err in determining that defendant was competent to waive counsel and proceed *pro se*. We further disagree with defendant's assertion that his "ability to think rationally and mount a semblance of a defense is highly questionable."

Defendant also suggests, as part of the first issue raised by him on appeal, that "even his fitness to stand trial was highly questionable." However, our determination that defendant was competent to proceed *pro se* necessarily includes a determination that defendant was also fit to stand trial. (See Ill. Rev. Stat. 1983, ch. 38, par. 104—10.) On the record before us there is no *bona fide* doubt of defendant's fitness to stand trial. See Ill. Rev. Stat. 1983, ch. 38, par. 104—11(a).

■ As his second issue on appeal, defendant urges that the trial court should have, *sua sponte*, declared a mistrial when defendant

was unable to conduct proper examination of defense witnesses.

The record indicates that the trial court was faced with a defendant who was both unruly and disrespectful and who refused to follow elementary standards of courtroom decorum and procedure. Defendant injected unsworn testimony into his questions to witnesses, asked questions that were irrelevant and beyond the scope of his offers of proof, and in general delayed the trial. The court warned the defendant that if his conduct continued the court would either prohibit defendant from calling further witnesses or require the public defender to conduct all examinations. Despite the court's warning, defendant's conduct continued and the court ordered the public defender to question the remaining defense witnesses. However, defendant was allowed to give a closing argument and told the jury: "I almost deliberately got [the public defender] to take over at that point."

"When a defendant chooses to represent himself, he assumes responsibility for conducting his own defense [citation], and he is not entitled to favored treatment or special consideration because he has made this choice [Citations.]" (*People v. Beardsley* (1985), 139 Ill. App. 3d 819, 826, 487 N.E.2d 731, 736.) In this regard, our supreme court has stated:

> "[A]s held in *People v. Burson*, 11 Ill. 2d 360, 373, [143 N.E.2d 239,] the defendant's right to defend himself is subject to the constant duty of the court to protect the judicial process from deterioration occasioned by improper and inadequate conduct of the defense. In such situation the court possesses broad discretion in relation to the appointment of counsel for advisory or other limited purposes or to supersede the defendant in the conduct of the defense. Continuous supervision of the trial is required in order to maintain proper judicial decorum to the end that defendant may receive a fair trial." *People v. Allen* (1967), 37 Ill. 2d 167, 172, 226 N.E.2d 1, 4.

Defendant relies on the case of *McKaskle v. Wiggins* (1984), 465 U.S. 168, 79 L. Ed. 2d 122, 104 S. Ct. 944, for the proposition that participation by standby counsel over defendant's objection should not be allowed to destroy the jury's perception that the defendant is representing himself. (465 U.S. 168, 177-78, 79 L. Ed. 2d 122, 133, 104 S. Ct. 944, 950-51.) However, *McKaskle* is distinguishable from the case at bar.

First, Wiggins' complaint in *McKaskle* was that "his *Faretta* right to present his defense *pro se* was impaired by the distracting, intrusive, and unsolicited participation of counsel throughout the trial." (465 U.S. 168, 176, 79 L. Ed. 2d 122, 132, 104 S. Ct. 944, 950.) While

the public defender's examination of the final defense witnesses was over defendant's objection, the public defender in the instant case was not distracting or intrusive. Furthermore, defendant himself brought about this result by reason of his inability or unwillingness to follow proper courtroom procedure.

Second, the *McKaskle* court recognized that there is no absolute bar to standby counsel's unsolicited participation at trial and that "[t]he trial judge may be required to make numerous rulings reconciling the participation of standby counsel with a *pro se* defendant's objection to that participation; nothing in the nature of the *Faretta* right suggests that the usual deference to 'judgment calls' on these issues by the trial judge should not obtain here as elsewhere." (465 U.S. 168, 176, 177 n.8, 79 L. Ed. 2d 122, 132, 133 n.8, 104 S. Ct. 944, 950, 950-51 n.8.) The *McKaskle* court also recognized that the right of self-representation is not a license to abuse courtroom dignity and that a defendant's sixth amendment rights are not violated when a trial court appoints standby counsel in order to enforce basic rules of courtroom protocol. 465 U.S. 168, 184, 79 L. Ed. 2d 122, 137, 104 S. Ct. 944, 954.

We conclude, therefore, that in the case at bar the trial court did not err in requiring the public defender to conduct the examination of the final eight defense witnesses.

■ Defendant also raises one issue in his *pro se* brief. Defendant claims that the trial court erred in failing to consider his physical condition when imposing a sentence of imprisonment.

Section 5—5—3.1(a)(12) of the Unified Code of Corrections provides that if the imprisonment of the defendant would endanger his medical condition, such factor shall be accorded weight in minimizing the sentence. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.1(a)(12).

At the outset we would note that defendant was not eligible for probation, as he had been convicted of burglary within 10 years of the offenses in the case at bar. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(c)(2)(F).) Furthermore, it is apparent from the record that the trial court was fully aware of defendant's medical condition even before trial. The defendant's spinal cord was injured in an automobile accident and as a result he was confined to a wheelchair and requires special medical treatment. Medical personnel were present with defendant in the courtroom and arrangements were made during trial to ensure that defendant received proper medical care.

The report of proceedings of the sentencing hearing revealed that the trial court considered defendant's medical condition and specifically considered section 5—5—3.1(a)(12) of the Unified Code of Correc-

tions. The court stated: "He's getting medical treatment. He does not like the medical treatment. He is displeased with the medical treatment he's receiving now. But I've seen no showing that being in prison is going to endanger, notwithstanding all the statements the defendant has made."

The defendant failed to make a showing that imprisonment would endanger his medical condition and we conclude that the trial court's sentence was not an abuse of discretion. See *People v. Spinks* (1980), 80 Ill. App. 3d 1096, 1099-1100, 400 N.E.2d 634, 636; *People v. Kelley* (1975), 25 Ill. App. 3d 753, 760-61, 324 N.E.2d 82, 87-88.

For the foregoing reasons, the judgment of the circuit court of Shelby County is affirmed.

Affirmed.

KARNS, P.J., and WELCH, J., concur.