THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
STEPHEN WARD, Defendant-Appellant.
Fourth District   No. 4—90—0386

Opinion filed February 13, 1991.

McCULLOUGH, J., dissenting.

Daniel D. Yuhas and Jon Mcphee, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and Donna Dagnall, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

After a jury trial, defendant, Stephen Ward, was found guilty of aggravated battery on a corrections officer (Ill. Rev. Stat. 1989, ch. 38, par. 12—4(b)(6)) and sentenced to an extended term of 10 years in prison. On appeal, defendant argues that he was denied his sixth amendment right to conduct his own defense. We agree and reverse.

In October 1989, an indictment charged defendant with two counts of aggravated battery. On November 14, 1989, defendant, an inmate at Pontiac Correctional Center, appeared before the court for the first time on that indictment and was advised, *inter alia*, that he had the right to be represented by counsel and that if he could not afford to hire an attorney of his own choice, someone would be appointed to represent him, namely, the public defender. When defendant responded that he did not want a public defender, but "would appreciate a bar association [lawyer]," the court replied that defendant did not have the choice of who his appointed counsel would be. The court explained to defendant that the county had a public defender who had the responsibility to represent accused people such as defendant. Defendant continued to object to the public defender's ap-

pointment, explaining that, "I'm a two time loser. I feel that a public defender wouldn't represent me to the fullest." The court explained again that under the law, defendant had no choice as to who his appointed lawyer would be, stating, "You can refuse a lawyer all together [sic], but you don't have a choice ***." Defendant responded, "If it comes to that, that's what I'll do then." The court appointed the public defender anyway and recommended to defendant that he at least speak to his court-appointed counsel before he decided whether to have that counsel represent him. The court then continued the matter for a few days.

On November 22, 1989, defendant next appeared in court, and the public defender appeared as his counsel. Defendant was arraigned and pleaded not guilty, and the case was set for trial in January 1990. Counsel filed various discovery motions on defendant's behalf, and they were granted.

On December 22, 1989, defendant appeared in court and complained about the public defender's representation. After listening to these complaints, the trial court found no deficiencies in counsel's representation. Defendant continued to indicate that he had a problem with his court-appointed counsel, saying, "I don't feel comfortable with him." After further discussion, the trial court told defendant that his choices were either to continue with the court-appointed counsel, to hire a private lawyer, or to represent himself as his own lawyer. When defendant continued to complain and indicated that maybe he should represent himself, the court said that there was no need to make a final decision at that hearing and that they could talk about the matter again in January.

On January 8, 1990, a hearing was conducted on defendant's motion for a change of place of trial, which was filed by his court-appointed counsel, and the motion was denied. Thereafter, the trial court inquired of defendant regarding his court-appointed counsel, and defendant responded that his position was the same as when he was last in court, namely, that he wanted a different lawyer appointed for him. The court again explained that it was not going to take that action, stating that it could discharge defendant's court-appointed counsel, but that would leave defendant with only two options: first, that he represent himself; or second, that he or his family hire a private attorney to represent him. Defendant responded that he did not have the resources to do that. Defendant then stated, "I am not going to represent myself. I don't know how to represent myself." The matter was continued for trial until February, and the court concluded the proceedings by again informing defendant that it had no reason to

discharge his court-appointed counsel.

On February 13, 1990, a different representative of the public defender's office appeared on behalf of defendant. In conversation with the trial court, defendant indicated that he did not like his new court-appointed attorney any better than the previous one, explaining that the court had "to understand it is not my fault because I am getting a wicked lawyer." After further discussion with the court, defendant said that he would file a motion to represent himself, "but I am not going to be held accountable for anything that goes wrong in the case because I don't know anything about the law." In response, the court said that defendant had the right to make the request and a constitutional right to defend himself, but "I would strongly try and discourage anybody from doing that." The following colloquy then took place:

"DEFENDANT: No, sir, I am forced with no choice.

THE COURT: See, Mr. Ward, we run into that an awful lot now.

DEFENDANT: Look [at] the way the system operate[s].

THE COURT: Defendant comes in and says 'judge, this whole system is against me. Everybody is working together on this. They are going to get me convicted. I don't have a chance. I don't want this public defender. I don't want the lawyer you appointed. He is not going to represent me. He is going to sell me out. I am going to get convicted.' Then I say 'Do you want a lawyer?' You say, 'No, judge, I really like to have a lawyer but I want one other than the state pays for.' I say, 'It has to be a P.D.' I say, 'Do you want to represent yourself?' You say, 'No, judge, if I was convicted, I will say it was a dumb move on my part and the judge shouldn't have let me do it. I done a bad job on it and got convicted. I shouldn't have to do anymore time because I represented myself.' What happens on those cases the Illinois Supreme Court and U. S. Supreme Court has said 'Hey, that is too bad. If an inmate wants to represent himself and screws up his case and the court tells him what kind of problems there are and he loses and messes up, then he can't come back later and say I goofed it up.'

DEFENDANT: I am aware of that.

THE COURT: 'I want to start over. I don't like the way it turned out without a lawyer. I want to have a lawyer and see how it turns out.' No, we do it once. Unless there is some kind of error in the way the case was handled you are stuck with whatever the results are.

DEFENDANT: I am aware of that.

THE COURT: Lets [sic] talk about that.

If you are going to represent yourself, I need to know some things.

How far have you gone in school?

DEFENDANT: Tenth grade.

THE COURT: Are you able to read and write?

DEFENDANT: Yes.

THE COURT: Have you worked on any kind of legal motion in any other court cases you have been involved in?

DEFENDANT: Yes.

THE COURT: Could you tell me the type of case or cases that have been involved?

DEFENDANT: Civil matters.

THE COURT: Have you filed some civil lawsuits in your own behalf?

DEFENDANT: Yes.

THE COURT: Have you tried to represent yourself before?

DEFENDANT: No. Never. I was forced like circumstances like this here.

THE COURT: Have you ever tried to do your own legal research in a law library?

DEFENDANT: Tried to do the best I can.

THE COURT: No. Have you tried to research some problems before?

DEFENDANT: No.

THE COURT: Do you know anything about researching the law?

DEFENDANT: No, I don't.

THE COURT: Have you ever actually gone through a trial where you have represented yourself?

DEFENDANT: No, sir.

THE COURT: Do you know anything about the rules of evidence which apply in a criminal case?

DEFENDANT: No, I don't.

THE COURT: Have you ever been forced to try and pick a jury for a jury trial?

DEFENDANT: No, I haven't.

THE COURT: Have you ever called witnesses into court and questioned witnesses?

DEFENDANT: No, sir.

THE COURT: Have you ever made an argument to a jury

about what you believe has been proven or not proven?

DEFENDANT: No, sir.

THE COURT: Have you ever prepared what are called legal instructions as to what the law is that would apply to your case that you wanted the judge to give to a jury?

DEFENDANT: No, sir.

THE COURT: This is a case in which you are charged with two counts of aggravated battery. The possible penalties upon conviction would be an additional term of imprisonment for a period of anywhere from two years up to five years, which would carry with it a one year supervised release or parole period. Depending upon your past record, the state could ask for an extended sentence of anywhere from five to ten years, if you were convicted. You could be ordered to pay a fine of up to $10,000.00 in addition to an additional period of imprisonment. If you have a Class II or higher felony conviction within the last ten years, and I can't remember if you have indicated—what is your present sentence?

DEFENDANT: 29 years.

THE COURT: For a murder?

DEFENDANT: Yes.

THE COURT: Okay. That is within the last ten years?

DEFENDANT: Yes.

THE COURT: Then I think I may have told you before if you would be convicted of aggravated battery, the only possible sentence you could receive would be a consecutive sentence or add-on sentence of anywhere from two years up to ten years in DOC. There would be no possibility other than prison time and it would not start until after you finished your present sentence together with whatever good time you would have and whatever loss of time you would have. All you are looking at is a possibility of more prison time after you have finished your sentence, if you should be convicted. I want you to understand that it is a possibility. Do you understand that?

DEFENDANT: No. I don't understand."

Defendant then proceeded to once again complain about being put to the choice of either representing himself or being forced to trial with an attorney from whom he could not get "honest treatment." The trial court patiently discussed this subject further and again informed defendant that there was no reason why his present court-appointed counsel could not and would not do a good job on his be-

half. The court then discussed with counsel possible dates for trial, and the following discussion took place:

"THE COURT: Mr. Ward, after considering your request to represent yourself based upon the theory that the cases—and you are saying we already figure the case is a loser and I might as well mess it up myself—

DEFENDANT: I am not going to mess it up. That is what you are saying.

THE COURT: What I am saying, Mr. Ward, based upon your educational background even though you have filed civil matters in your behalf, based upon your having no trial experience, no research experience, having confirmed with me you do not understand or know what the procedures would be, I do not have to permit you to represent yourself because I have to find that you are capable of doing that. I find specifically for the record, after considering your responses, that you are not capable of doing it, that you are kind of entering into that on the basis that well, I at least will be more interested in my case than the lawyer will be and I will do a better than the lawyer will do, I am not convinced that is true and, accordingly, I am not going to discharge court appointed counsel. So you will have an attorney representing you."

On April 2, 1990, a hearing was held on a series of motions defendant filed *pro se* on March 23, 1990, requesting that the court discharge his court-appointed counsel. As noted by the court, those motions again asserted defendant's dissatisfaction with his court-appointed counsel and his desire to have the court appoint a third lawyer to represent him. The trial court again denied defendant's request for further relief, reaffirmed its previous findings that defendant was not capable, by virtue of training or experience or skills to defend himself, and concluded that defendant "very much needs the assistance of counsel."

On April 9, 1990, defendant's case was called for trial and defendant appeared in open court and claimed to have no lawyer. When the court pointed out that defendant had court-appointed counsel present, defendant responded that he could not be defendant's lawyer because the lawyer "ain't competent." More discussion then took place between the court and defendant regarding his displeasure with his court-appointed counsel, during which defendant repeatedly interrupted the trial court, requiring the court to inform defendant that if he did not control himself, he would be held in the side room. Defendant said he would prefer that, but later declined

to waive his right to be present. Further discussion ensued regarding defendant's representing himself, but the court found his behavior too disruptive to permit him to do so. (We need not concern ourselves with this later behavior, however, because for the reasons hereafter stated, at the February 13 hearing defendant was improperly denied his right to represent himself. His subsequent disruption was a manifestation of his displeasure with the court-appointed counsel whose services he was continuously rejecting. We decline to speculate as to how defendant would have conducted himself had he been permitted to proceed *pro se*.)

A trial was finally held, and several correctional officers testified about the incident in which defendant struck one correctional officer above the eye, knocking him to the ground, and requiring four stitches. After the State rested, the defense presented no evidence. The jury returned verdicts finding defendant guilty of aggravated battery, and he ultimately was sentenced to 10 years in prison.

■ In *People v. Silagy* (1984), 101 Ill. 2d 147, 461 N.E.2d 415, the Illinois Supreme Court addressed the issue of a defendant's right to conduct his own defense and stated the following:

> "It is clear that the sixth amendment to the Constitution of the United States [citation] provides for the right of self-representation in criminal proceedings. (*Faretta v. California* (1975), 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525; see also, Ill. Const. 1970, art. I, sec. 8.) The ' "right of a defendant to represent himself, when his choice is intelligently made, is as basic and fundamental as his right to be represented by counsel." ' [Citations.] The Supreme Court, in *Faretta*, noted the 'nearly universal conviction, on the part of our people as well as our courts, that forcing a lawyer upon an unwilling defendant is contrary to his basic right to defend himself if he truly wants to do so.' [Citation.] Although a court may consider his decision unwise, if it is freely, knowingly and intelligently made, that decision must be accepted out of 'that respect for the individual which is the life-blood of the law.' " *Silagy*, 101 Ill. 2d at 179-80, 461 N.E.2d at 431.

See also *People v. Gibson* (1990), 136 Ill. 2d 362, 374-75, 556 N.E.2d 226, 231.

The record in the present case makes clear that when defendant was informed by the trial court that his only choices were either to represent himself or to continue with court-appointed counsel,

defendant stated that he wished to represent himself. On this record, the court's decision that defendant had to choose between these two alternatives was entirely correct; the problem arose only when the court would not abide by the choice defendant made.

■ Supreme Court Rule 401 (107 Ill. 2d R. 401) requires that a court shall not accept a waiver of counsel until it has addressed defendant personally in open court, informing him of and determining that he understands the nature of the charge, the minimum and maximum sentence prescribed by law (including sentences the defendant may be subjected to because of prior convictions or consecutive sentences), and last, that defendant has a right to counsel and, if indigent, to have counsel appointed for him. Because relinquishment of the right to counsel is such a critical step for a defendant to take, the court in *People v. Davis* (1988), 169 Ill. App. 3d 1, 6, 523 N.E.2d 165, 167-68, wrote the following:

> " '[A] defendant may competently waive counsel if such an election is voluntary and constitutes "a knowing and intelligent relinquishment or abandonment of a known right or privilege." ' *People v. Baker* (1982), 92 Ill. 2d 85, 91, quoting *Edwards v. Arizona* (1981), 451 U. S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1883.
>
> * * *
>
> In ruling on a motion for self-representation, the trial court must determine whether the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to counsel. The criteria generally considered in making that decision include the defendant's age, level of education, mental capacity and prior involvement, if any, in legal proceedings."

To ensure that a defendant's request for self-representation is an intelligent and knowing waiver of his right to counsel, we agree with Professors Wayne R. LaFave and Jerold H. Israel that it would be desirable for a trial court to inform defendant of the following matters:

> (1) presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules governing the conduct of a trial;
>
> (2) a lawyer has substantial experience and training in trial procedure and the prosecution will be represented by an experienced attorney;
>
> (3) a person unfamiliar with legal procedures (a) may allow the prosecutor an advantage by failing to make objections to

inadmissible evidence, (b) may not make effective usage of such rights as the *voir dire* of jurors, and (c) may make tactical decisions that produce unintended consequences;

(4) the defendant proceeding *pro se* will not be allowed to complain on appeal about the competency of his representation;

(5) the effectiveness of his defense may well be diminished by his dual role as attorney and accused;

(6) defendant will receive no special consideration from the court;

(7) defendant will receive no extra time for preparation or greater library time (if in prison);

(8) a lawyer can render important assistance (a) by determining the existence of possible defenses to the charges against defendant, (b) through consultations with the prosecutor regarding possible reduced charges or lesser penalties, and (c) in the event of a conviction, by presenting to the court matters which might lead to a lesser sentence;

(9) in the event the court accepts defendant's decision to represent himself, defendant will not be given an opportunity to change his mind during trial; and

(10) if the court in its discretion is not going to appoint standby counsel, to specifically inform the defendant that there will be no standby counsel to assist him at any stage during trial.

See W. LaFave and J. Israel, 2 Criminal Procedure §§11.5(a), (b), (c), at 42-45 (1984) (hereinafter LaFave and Israel).

▇ As the court noted in *Silagy*, the defendant's choice to represent himself must be "intelligently made." (*Silagy*, 101 Ill. 2d at 179, 461 N.E.2d at 431.) While the trial court must determine that the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to counsel, the trial court is not permitted to decide whether that decision is wise. However, that is essentially what the trial court decided in this case when it stated that, based upon defendant's limited background, he was not capable of representing himself. The trial judge specifically noted, "I do not have to permit you to represent yourself because I have to find that you are capable of doing that." This is an incorrect statement of the law, but an understandable one in view of some confusion regarding this subject in various appellate court decisions.

The Fifth District Appellate Court in *People v. Siler* (1987), 154 Ill. App. 3d 102, 506 N.E.2d 756, recently wrote regarding the trial

court's inquiry into a defendant's ability to represent himself and stated the following: "A careful inquiry must be made to determine defendant's ability to conduct his own defense, focusing on his age, level of education, mental capacity, and prior experience with legal proceedings. (*People v. Graves* (1984), 134 Ill. App. 3d 473, 476, 480 N.E.2d 1142, 1144.)" *Siler*, 154 Ill. App. 3d at 108, 506 N.E.2d at 760.

In *People v. Graves* (1984), 134 Ill. App. 3d 473, 480 N.E.2d 1142, the First District Appellate Court stated the following: "A careful inquiry must be made to determine defendant's ability to conduct his own defense, focusing on his age, level of education, mental capacity, and prior experience with legal proceedings. (*People v. Kavinsky* (1980), 91 Ill. App. 3d 784, 414 N.E.2d 1206.)" *Graves*, 134 Ill. App. 3d at 476, 480 N.E.2d at 1144.

In *People v. Kavinsky* (1980), 91 Ill. App. 3d 784, 414 N.E.2d 1206, the First District Appellate Court wrote the following: "In waiver of counsel cases, a careful inquiry must be made to determine the defendant's ability to conduct his own defense, focusing on his age, level of education, mental capacity, and prior experience with legal proceedings. *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 49-50, 372 N.E.2d 1014." *Kavinsky*, 91 Ill. App. 3d at 798, 414 N.E.2d at 1217.

In *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 372 N.E.2d 1014, the First District Appellate Court wrote the following:

> "[I]n addition to engaging in a colloquy with the defendant to advise him of his right to counsel, the court must still determine for itself whether the accused has the requisite capacity to effectuate an intelligent waiver of his right. The objective criteria commonly utilized by courts to make this determination are the defendant's age [citation], level of education [citation], mental capacity [citation] and prior involvement, if any, in legal proceedings [citation]. On the basis of the surrounding circumstances and these relevant factors, the trial court must make a subjective evaluation of whether an accused was aware of what he was doing." (*Vanderwerff*, 57 Ill. App. 3d at 49-50, 372 N.E.2d at 1019.)

Clearly, the *Vanderwerff* court was discussing inquiries the trial court should make when determining whether a defendant is making "an intelligent relinquishment or abandonment of a known right or privilege." These inquiries concerned *waiver*; they had nothing to do with inquiring into the defendant's *ability to conduct his own defense*, as the courts in *Kavinsky, Graves*, and *Siler* stated. Inso-

far as these cases suggest, as did the remarks of the trial court in the present case, that "a careful inquiry must be made to determine the defendant's ability to conduct his own defense" (*Kavinsky*, 91 Ill. App. 3d at 798, 414 N.E.2d at 1217), we decline to follow them. Instead, we agree with Professors LaFave and Israel that there are three possible grounds for denying a defendant's request to proceed *pro se*.

■ First, the request might come so late in the proceedings that to grant it would be disruptive of the orderly schedule of proceedings. We caution, however, that when a request to proceed *pro se* is made and there is no request for additional time to prepare, a motion to proceed *pro se* should generally be viewed as timely as long as it is made before trial. LaFave and Israel, §11.5(d), at 47.

Second, a trial judge may terminate self-representation by a defendant who engages in serious and obstructionist misconduct, as noted by the Court in *Faretta v. California* (1975), 422 U.S. 806, 834 n.46, 45 L. Ed. 2d 562, 581 n.46, 95 S. Ct. 2525, 2541 n.46. While this authority ordinarily would be exercised only after a defendant has begun to represent himself, in *exceptional situations*, as noted by Professors LaFave and Israel, a defendant's behavior in the course of seeking to obtain self-representation may in itself be disruptive and thereby justify denying his motion to proceed *pro se*. (LaFave and Israel, §11.5(d), at 47-48.) As we observed earlier, defendant's behavior in the present case did not approach being disruptive or obstructionist until after his motion to proceed *pro se* had been erroneously denied.

Third, defendant's request for self-representation may be denied when, despite the court's efforts to explain the consequences of waiver, the court finds the defendant is unable to reach the level of appreciation needed for a knowing and intelligent waiver. (LaFave and Israel, §11.5(d), at 47-48.) We emphasize, however, that this is an inquiry into the defendant's ability to make a knowing and intelligent waiver of his right to counsel; it is not an inquiry into defendant's ability to do an appropriate job defending himself at trial. As Professors LaFave and Israel have noted, "trial courts hesitate to deny the request of an adult defendant unless he appears to be suffering from some significant mental disability." (LaFave and Israel, §11.5(d), at 48.) We agree that this standard should guide the trial courts as they make such inquiries and resolve the question of whether defendant can make an intelligent waiver of his right to counsel.

■ Once the trial court (1) has addressed a defendant in open

court who wishes to proceed *pro se*, (2) has appropriately informed him of the rights he is waiving and the potential disadvantages of his action, as we have discussed in this opinion, and (3) finds that defendant is knowingly waiving his right to counsel, then the court should make its findings accordingly and, thereafter, respect the defendant's decision to exercise his constitutional right of self-representation. That right may not be thwarted by the trial court's opinion that defendant's decision is ill-advised, unwise, or unsound, however correct that opinion may be.

■■ Because the trial court in the present case denied defendant his constitutional right to self-representation on the ground that the court viewed defendant as incapable of adequately representing himself, defendant's conviction is reversed and the cause is remanded for a new trial.

Reversed and remanded.

SPITZ, J., concurs.

JUSTICE McCULLOUGH, dissenting:
A now deceased reviewing court judge when asked when he dissented answered, when my outrage overwhelms my inertia. This is such a case. Although the record is not flawless, the trial court did not err as asserted by the majority. The defendant never knowingly and intelligently waived his right to counsel. (*Faretta*, 422 U.S. at 835, 45 L. Ed. 2d at 581, 95 S. Ct. at 2541.) Contrary to the majority position, the defendant's behavior from the beginning of the proceedings was disruptive and obstructive. The majority reviews some of the proceedings of the trial court concerning defendant's request for other counsel or desire to represent himself. I might only say that based upon what is stated in the majority decision with respect to the trial transcript, if the defendant had filed an appeal alleging that he had been deprived of his right to counsel, we would reverse posthaste.

Initially, the issue was not brought to the trial court's attention in defendant's post-trial motion. For this reason alone, the issue is waived (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124), unless it falls within the limited exception of plain error affecting substantial rights (134 Ill. 2d R. 615(a)). This is not such a case.

The defendant first appeared in court on November 14, 1989, when he was arraigned and indicated to the court that he would appreciate a bar association attorney and did not want a public de-

fender. He further indicated "I'm a two time loser. I feel that a public defender wouldn't represent me to the fullest." The trial court told the defendant that he did not have a choice between a bar association lawyer and a public defender, but that he could refuse a lawyer altogether. The defendant responded, "If it comes to that, that's what I'll do then." The court at that time appointed the public defender to represent the defendant. Again, on November 22, 1989, the defendant appeared for further arraignment. The defendant waived reading of the charges, entered a plea of not guilty and filed a motion for discovery. The court advised defendant of his right to speedy public trial. The court also advised the defendant that Mr. Ahlemeyer, apparently his attorney, was going to file a motion to change venue. Respondent indicated he understood and that was what he wanted to do. It should be pointed out that at this hearing, defendant made no objection to his representation by Ahlemeyer as public defender. On December 22, 1989, there was a hearing at the request of the public defender for the purpose of determining his further representation of the defendant in the case. The trial court indicated to the defendant that he did not have the right to name the attorney that would represent him. The defendant indicated that he just did not trust the public defender. The trial court indicated that if there was a personality conflict between Ahlemeyer and the defendant, the court would appoint another public defender to represent the defendant, stating:

"If you want to fire Mr. Ahlemeyer, I will let you do that, but if you do, you will be representing either yourself as your own lawyer or you will have to hire a private lawyer. Okay. I am not going to force you to take Mr. Ahlemeyer, if you don't want him, but if you don't want him, then you are going to be your own lawyer."

The defendant responded: "I am going to be my—I ain't went to school to know the law." Defendant further stated, "I don't appreciate being between a loaded shotgun and Mr. Ahlemeyer. Either way I go, I am going to lose." The court indicated it would take the matter of Ahlemeyer's representation up again at the next hearing and also indicated, "unless you can come up with something stronger than that, that is not good enough for me under the law to get rid of Mr. Ahlemeyer unless you get rid of him and say fine, I will represent myself."

Another hearing was held on January 8, 1990, upon the defendant's motion for change of venue. The motion for change of venue was denied. The court again addressed the defendant: "Mr. Ward,

what is your present position as far as counsel is concerned?" The defendant responded that his position was not different, and was the same as the last hearing. The defendant reiterated his feeling that he just did not trust Ahlemeyer as his attorney. The court addressed the defendant: "[I]f I discharge Mr. Ahlemeyer, leaving you with two options. First, that you represent yourself." The defendant responded: "I am not going to represent myself. I don't know how to represent myself." The defendant, in that hearing, further responded with respect to Ahlemeyer's representation, "Like I don't have any problem with Ahlemeyer. Like I told him what disturbs me everytime I try to explain my situation it seems like he more leaning to the other side like he was defending the other side." Further hearing was set for February 13, 1990, and at that time the defendant appeared in court with a representative of the public defender's office, Paul Mason. The defendant indicated to the court that his present attorney, Mason, told him from the discovery that there was no doubt in his mind what the impact was going to be on the jury's mind. The court asked, "Did he tell you for that reason I am not going to represent you, I will not call witnesses?" Defendant responded, "No. He did not tell me that." The court indicated to the defendant that Ahlemeyer and Mason were experienced attorneys, and the defendant's only response was that because they had told him he could not win the case, "all I am going to ask you is that *I will file a motion to represent myself* but I am not going to be held accountable for anything that goes wrong in the case because I don't know anything about the law." (Emphasis added.) The court indicated that the defendant had the right to make the request and a constitutional right to defend himself. The defendant responded that he was forced because he had no choice. Specifically, defendant said, "I am saying if I am going to be charged with a case and I be appointed a lawyer. That is all I want is a fair representation. That is all I want." As stated in the majority opinion, the court then went through the questioning of the defendant, which showed that the defendant had gone through the tenth grade in school, was able to read and write, had worked on some legal motions in other court cases which were civil cases; he had filed civil lawsuits in his own behalf, but had never tried to represent himself before; he had tried to do the best he could with the law library, but indicated he had not researched problems before, he did not know anything about researching the law, and that he had never actually gone through a trial where he represented himself. He further acknowledged that he did not know anything about the

rules of evidence which apply in criminal cases, he had never tried a case or picked a jury by himself, he had never called witnesses into court and questioned the witnesses, and he had never presented an argument to the jury or prepared instructions to be given to the jury in a criminal case. The court stated: "I am not going to discharge court appointed counsel. So you will have an attorney representing you." Because the defendant was in Stateville Correctional Center, the court was concerned that his attorney would not be able to talk to the defendant. The court stated he would have to "writ the defendant down" to which the defendant responded: "I would expect to talk with him today and I think if necessary, I can write him back." At the close of the hearing, defendant was asked if there was "anything you don't understand or want to say for the record or anything else you want to add?" to which the defendant responded, "No, sir."

On March 23, 1990, defendant filed several *pro se* motions, including a motion for withdrawal of the appointed public defender and a motion for the appointment of a bar association lawyer. With respect to the motion for appointment of bar association lawyer, defendant stated he was indigent, without the financial resources to retain counsel to represent him in his defense, and that he had a Federal and State constitutional right to effective assistance of counsel. Although defendant stated at the February 13 hearing he would file a motion to represent himself, *he did not do so*. In none of defendant's *pro se* motions did he indicate he desired to proceed *pro se*.

A further pretrial hearing was held on April 2, 1990. The protracted hearing dealt generally with the presentation of witnesses and specifically the desire of the defendant to call a witness named Dr. Shansky. The record of that hearing does not show any request by the defendant to represent himself, but merely his disagreement with the way in which his appointed attorney was handling his case in the pretrial stages. The trial court denied the *pro se* motions.

After the April 2 hearings, defendant on April 9, 1990, filed another *pro se* pleading asking the court to reconsider its denial of his motions as to the methods of discovery, to withdraw appointed counsel, and for appointment of a bar association lawyer. Again, defendant never mentioned his desire to proceed *pro se*.

The defendant's jury trial began on April 9, 1990. After some preliminary matters, the defendant indicated he did not have a lawyer and that, just because the public defender was present in court with him, "He can't be my attorney." The court told the defendant

again that he had the right to proceed without a lawyer. The trial court told the defendant:

> "[F]rom Judge Glennon's docket entries, there is—apparently you have never given them a reason why Mr. Ahlemeyer or now Mr. Mason can't represent you. Do you wish to tell me anything now concerning why Mr. Mason is not your lawyer? Is there anything you want to tell me on the record now before we start the jury trial?"

Defendant stated it was already on the record as to why he did not want Mason to represent him. The trial court reviewed the proceedings and stated, "I find no reason stated why Mr. Mason cannot represent you." The prosecutor suggested that the record clearly reflect the defendant's right to proceed *pro se*. The defendant said, "I will represent myself." The court in response, "Okay. If you do that, I will—if you ask for that, I will discharge Mr. Mason. Mr. Mason will not represent you. And I will expect you to follow the rules of law, all of the rules." And the court told the defendant, "If you want to represent yourself, that is fine. That is your choice. But I will expect you to understand the rules of evidence, the rules of procedure." The defendant continued his disruptive behavior. His nonresponsive answer was, "Why don't you just leave me in the bull pen then?" After further questions to the defendant, the court stated, "Okay. I think I am going to simply find he is too disruptive, too argumentative at this point to intelligently make a decision on whether he wishes to proceed pro se or be present." Although the defendant indicated he would rather be in "the bull pen," the record shows the defendant was present during the proceedings at trial.

The public defender actively participated in the trial and conducted extensive cross-examination of the State's witnesses. At the close of the prosecutor's case, the defendant's attorney informed the court as follows:

> "I talked with Mr. Ward over the lunch recess, and he advised me that he did not want to take the stand. He also advised me that he did not want Jerrico Smalley to take the stand as a witness. And Smalley is here at the courthouse at this time. And based on his instructions, I will not be calling those people. I believe that the defendant would have some comments that he wants to make about that decision. And I would request you to let him make those comments."

The court allowed the defendant to respond:

> "I was advising Paul Mason that the statement that I was

not allowed to bring out in my discovery since constantly and repeatedly being brought out now at trial, I will not take the stand, or I won't allow my witness to take the stand because on the ground that these here—they constantly bringing out the statement that I tried to put on discovery."

The court also asked the defendant, "Is there something that you wanted to tell the jury that you are not being allowed to?" To which the defendant responded, "No. It is not really that. I believe strongly that if that would have been admitted in a discovery, that would have gave Paul Mason a better idea and investigate the case more." The court then again asked the defendant, "Have you discussed this with Mr. Mason, and you have decided not to testify, not to call Mr. Smalley?" to which the defendant responded, "Yes." The court then asked, "And not to call anyone else?" Defendant responded, "Yes." The court said, "Is that your choice?" and the defendant responded, "Yes." Defendant's attorney then responded that they had no evidence to present. With presentation of evidence completed, the conference on jury instructions held, and the jury properly instructed, the jury retired and returned a verdict finding the defendant guilty. The record shows the trial proceeded in an orderly fashion regardless of the disruptions by the defendant. The defendant made no objections to the court as to the effectiveness of his counsel and was allowed to address the court. Defendant's attorney filed an extensive post-trial motion. In his post-trial motion, defendant did not assert as error the failure to allow him to proceed *pro se*. The post-trial motion did assert error in denying defendant's motion to discharge the public defender and "advising defendant that his only choices were to accept Mr. Mason as attorney or to proceed on the case *pro se*." A review of the record clearly shows defendant never wanted to proceed *pro se*.

The defendant's post-trial motion was denied and, at sentencing hearing, when defendant was given his right to allocution, he indicated he did not desire to say anything.

On the merits, I agree the test is not who would do a better job, defendant *pro se* or appointed counsel. But this is not the issue. Contrary to the majority's position, the record is not clear that, when defendant was informed by the trial court that his only choices were to represent himself or continue with court-appointed counsel, he indicated a clear desire to represent himself.

Although defendant said he would file a motion to represent himself, none of the *pro se* motions filed made such a request. As pointed out, at the February 13 hearing, defendant stated he would

file a motion to represent himself. He subsequently filed several *pro se* motions and never mentioned his desire to represent himself. Defendant did not want to represent himself. He wanted a choice of attorneys.

I agree with the proposition, cited by the majority, stated in *Davis*:

> "[T]he trial court must determine whether the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to counsel. The criteria generally considered in making that decision include the defendant's age, level of education, mental capacity and prior involvement, if any, in legal proceedings." (*Davis*, 169 Ill. App. 3d at 6, 523 N.E.2d at 168.)

The trial court, at various hearings, inquired of the defendant as to his ability to conduct his own defense. The record is clear the defendant stated he could not do this. This is simply a case where the defendant did not want court-appointed counsel but wanted to participate in the decision as to who his counsel would be.

In *Faretta*, the defendant responded to the court's questions indicating that he knew how to handle the trial of the case and was able to make a knowing and intelligent waiver of his right to counsel. This is not the case here. As stated in *Faretta*:

> "Faretta clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel. The record affirmatively shows that Faretta was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." (*Faretta*, 422 U.S. at 835, 45 L. Ed. 2d at 582, 95 S. Ct. at 2541.)

I do not agree that *Kavinsky, Graves*, and *Siler* were incorrectly decided. Here, the trial court did not err, the issue on appeal is without merit, and the circuit court of Livingston County should be affirmed.