NO. 4-09-0713          Opinion Filed 3/8/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| TYRESE FISHER, | ) | No. 08CF1167 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles G. Reynard, |
| | ) | Judge Presiding. |

JUSTICE APPLETON delivered the judgment of the court, with opinion.
Presiding Justice Knecht and Justice Steigmann concurred in the judgment and opinion.

**OPINION**

A jury found defendant, Tyrese Fisher, guilty of a criminal drug conspiracy (720 ILCS 570/405.1 (West 2008)), and the trial court sentenced him to imprisonment for 14 years. Defendant appeals on several grounds, only one of which is necessary for us to consider. We agree with defendant's argument that the trial court denied him his constitutional right to self-representation and thereby committed a structural error.

If a defendant makes a timely and unequivocal choice to proceed *pro se* in a criminal case and if, after admonitions pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), the trial court finds the choice to be knowing and intelligent, the court must honor the choice, regardless of how unwise the choice might be. The court in this case refused to allow defendant to represent himself, because the court perceived that he lacked sufficient legal expertise to do so. The choice, however, should have been defendant's, not

the court's. Therefore, we reverse the trial court's judgment and remand this case for a new trial.

## I. BACKGROUND

On October 14, 2008, a grand jury returned an indictment charging defendant with four counts of unlawful delivery of a controlled substance (720 ILCS 570/401(c)(2), (d)(i) (West 2008)), counts which the State nol-prossed. On February 11, 2009, a grand jury indicted defendant on a fifth count, which charged him with a criminal drug conspiracy (720 ILCS 570/405.1 (West 2008)). On October 31, 2008, the trial court appointed the public defender to represent him.

On December 5, 2008, defendant filed a *pro se* motion to dismiss the public defender and to allow him to represent himself, because, as the motion put it, "[t]he defendants [*sic*] attorney [was] not appropriately handling the case in the way the defendant [was] pleased." More specifically, the motion made two complaints: (1) "[t]he defendants [*sic*] attorney has not had any contact including mail, phone or personal visits to discuss changes or updates to the defendants [*sic*] case," and (2) "[t]he defendant would like to file his own motion for dismissall [*sic*] based on written statements stating that he is not responsible of the charges mentioned in the indictment." The motion concluded: "Given all above, the defendants [*sic*] attorney should be dismissed and have the defendant represent himself." In a "whereof" clause, the motion requested the following relief: "Defendant's attorney be dismissed and order defendant to appear in front of this court as *pro se ad hoc."*

On December 16, 2008, the trial court held a hearing on defendant's motion

to discharge the assistant public defender and to represent himself. In the hearing, referring to defendant's statement that his attorney was "not appropriately handling the case in the way the defendant [was] pleased," the court asked defendant: "So tell me what it is that would please you." Defendant replied that his attorney had failed to comply with his request to file a motion for dismissal on the ground that Jerome Smith, rather than he, had committed the alleged offenses. Defendant told the court:

> "I had mailed my attorney a written statement from Jerome Smith that he, basically, said what was done on that date of the events that took place, and I wanted her to put in a motion for dismissal because the surveillance from the tapes and everything shows Jerome Smith doin' these crimes. The CS [(confidential source)] that the State has shows him sayin' that Jerome Smith done these crimes, and I was telling her that I need a motion for dismissal, man, because I'm not the one who done these crimes. I'm being charged for a delivery that someone else has done. They doin' the same charges on my and that person."

Thus, defendant was under the impression that it was impossible for both him and Smith to incur criminal liability for the same deliveries of a controlled substance--deliveries which Smith alone physically accomplished. Even though defendant had requested his court-appointed attorney to file a motion for dismissal on the ground that Smith, rather than he, was the culprit, his attorney had failed to do so.

That was only part of the reason why defendant distrusted his attorney. He also suspected that she would do to him now what he perceived she had done to him in a previous case in which she was appointed to represent him: concentrate on convincing him to enter a negotiated plea of guilty instead of preparing a vigorous defense for trial. He felt that he was "putting [his] life in the hands of someone" who wanted to make a deal with the State in lieu of making a good-faith effort to defend him, using what he regarded as this dispositive evidence in his favor.

The trial court asked the prosecutor if he had "any perspective about the Defendant's observations concerning the evidence in this case and what it purports to show." The prosecutor replied that this was "an accountability case" and that "the co-Defendant" had identified defendant as his supplier and had agreed to testify against him. As for the affidavit that defendant claimed was written by Smith, the prosecutor did not believe that Smith had written it, and he anticipated that Smith would deny writing it. Although the prosecutor thought the affidavit might be relevant for an attempted impeachment, the affidavit was not, in his opinion, "a magic wand that [made] the charges disappear."

Defendant insisted, however, that this was more than a written statement; it was a notarized affidavit. He told the court:

"THE DEFENDANT: Your Honor, at the same statement that he's saying that I have, it was notarized by the Notary Public here in--

THE COURT: Oh, my goodness, it was notarized!

- 4 -

THE DEFENDANT: Yes.

THE COURT: No kidding! Oh, that makes all the difference. I'm sorry I'm being a little sarcastic--

THE DEFENDANT: No problem.

THE COURT: --because I did want to hear a little bit about what the facts were since you were alleging them--

THE DEFENDANT: Okay.

THE COURT: --to be one way, and I suspect that maybe there would be a different view of the facts from the State's Attorney.

THE DEFENDANT: All right."

The trial court then explained to defendant that just because he had an affidavit presenting a version of the facts that differed from the State's version, it did not legally follow that the case should be dismissed. Instead, the very purpose of a jury trial would be to choose between the competing versions of what had happened.

Because of defendant's erroneous assumption that the affidavit would obviate a trial, the trial court had grave doubts about his ability to represent himself. The court told him:

"THE COURT: But regardless of what the facts are--

THE DEFENDANT: Um-hum.

THE COURT: --the idea of filing a motion for dismissal tells me I'm talking to somebody who doesn't know the law.

I'm talking to the Defendant here who's not a lawyer--

THE DEFENDANT: Okay.

THE COURT: --and doesn't understand the law.

THE DEFENDANT: All right.

THE COURT: Because you don't file a Motion to Dismiss in those circumstances. Any lawyer that would do that would be telling me they don't know the law, and they probably don't have a license to practice law, and they ought to be prosecuted for practicing law without a license, because it's-- absolutely no provision of law permits me to dismiss the charges based upon what you say the facts are.

THE DEFENDANT: Okay.

THE COURT: The answer to your problem is you have got to have a trial.

THE DEFENDANT: Okay.

THE COURT: And at a trial, the jury will decide what facts to believe, your facts or his facts.

THE DEFENDANT: Okay.

THE COURT: So I understand that you distrust your attorney, but she gave you the right advice. She told you that you couldn't do that, and that she would not do that for you because it would show that she doesn't know the law; and the

last thing in the world you want is a lawyer standing up on your behalf proving that she doesn't know the law.

THE DEFENDANT: All right.

THE COURT: And you wouldn't want her to do it, even though you want--even though you told her to do it, because it would make you both look stupid.

THE DEFENDANT: Okay.

THE COURT: Are you following me?

THE DEFENDANT: Yes, sir.

THE COURT: I'm going to deny your motion for dismissal of attorney, because, on the law, she's right, and you're wrong; and you're telling me, whether you like it or not--

THE DEFENDANT: Um-hum.

THE COURT: --that you need an attorney, so I'm not going to let you represent yourself, and she's going to remain your attorney. It's up to her boss to decide what cases to assign to her.

THE DEFENDANT: Okay."

Consequently, the trial court's stated reason for denying defendant's motion to represent himself was not that he was mentally incompetent or that his request for self-representation was unclear or equivocal. Rather, the stated reason was that defendant had evinced an ignorance of the technical rules of law and thus he clearly needed an attorney,

regardless of whether he wanted one.

## II. ANALYSIS

### A. Mental Capacity, Not Legal Acumen

We ask whether the trial court abused its discretion in denying defendant's motion to represent himself. See *People v. Rasho*, 398 Ill. App. 3d 1035, 1040-41 (2010); *People v. Shelton*, 401 Ill. App. 3d 564, 574 (2010). This standard of review is deferential. Our mere disagreement with the court's decision would not make the decision an abuse of discretion. *People v. Covington*, 395 Ill. App. 3d 996, 1002-03 (2009). Rather, "abuse of discretion" is associated with such adjectives as "arbitrary" and "clearly illogical." *Id*. An abuse of discretion goes outside the range of reasonableness and disregards established principles of law, thereby causing a party substantial prejudice. *Id*. We conclude that the court's denial of defendant's motion to represent himself in this case was an abuse of discretion in that it conflicted with an established principle of law, namely, our holding in *People v. Ward*, 208 Ill. App. 3d 1073, 1085 (1991), that a defendant's constitutional right of self-representation "may not be thwarted by the trial court's opinion that [the] defendant's decision is ill-advised, unwise, or unsound, however correct that opinion may be."

In *Ward*, 208 Ill. App. 3d at 1077-79, the defendant had unequivocally requested to represent himself, but the trial court perceived, through questioning him, that he lacked the legal skills essential to self-representation, and therefore the court denied his request. On appeal, however, we explained that the purpose of entering into a colloquy with a defendant who wished to proceed *pro se* was not to gauge his ability to defend

himself but, rather, to confirm that he had the capacity to make a knowing and intelligent waiver of his right to an attorney. *Ward*, 208 Ill. App. 3d at 1084.

This was not to say that it was inappropriate for the trial court to warn the defendant of the perils of self-representation and to try to impress upon him the advantages of having an attorney. In fact, by way of suggestion, we provided a list of warnings and information that it "would be desirable" to communicate to the defendant, over and above the admonitions required by Illinois Supreme Court Rule 401(a) (eff. July 1, 1984). *Ward*, 208 Ill. App. 3d at 1081-82. Nonetheless, while the trial court was perfectly free, and even encouraged, to give this extra advice to the defendant, the trial court could not force the defendant to choose wisely. Unless the defendant had a mental disability that incapacitated him from understanding the content of Rule 401(a), the sixth amendment (U.S. Const., amend. VI) required the court to honor his choice to represent himself, even if the choice was in all likelihood a disastrous one for the defense. *Ward*, at 1080, 1084.

### B. An Unequivocal Request To Proceed *Pro Se*

A waiver of counsel must be clear and unequivocal, not ambiguous. *People v. Burton*, 184 Ill. 2d 1, 21 (1998). The State argues that defendant was unclear and equivocal about his desire to represent himself. We disagree. In his motion, defendant stated: "Given all above, the defendants [*sic*] attorney should be dismissed and have the defendant represent himself," and he requested that "Defendant's attorney be dismissed and order defendant to appear in front of this court as *pro se ad hoc.*" This got the message across just fine.

The State tries to manufacture equivocation out of the deferential "okays" and

"all rights" with which defendant punctuated the trial court's remarks. Defendant said nothing, however, that could be reasonably interpreted as a withdrawal of his request to represent himself--and the very fact that, after these "okays" and "all rights," the trial court expressly denied his request to represent himself shows that the court did not understand the request to be withdrawn. We "indulge in every reasonable presumption against waiver of the right to counsel," but the operative word here is "reasonable." (Internal quotation marks omitted.) *Burton*, 184 Ill. 2d at 23. By saying "okay" after the court denied his request, defendant did not acquiesce to representation by the assistant public defender. The ruling *had* to be "okay," for the time being. See *Orazio v. Dugger*, 876 F.2d 1508, 1512 (11th Cir. 1989) ("To avoid a waiver of a previously-invoked right to self-representation, a defendant is not required continually to renew a request once it is conclusively denied ***.").

It is true that defendant appeared to acquiesce to the trial court's argument that he was grossly ignorant of the law and therefore ill-qualified to represent himself, as evidenced by his idea of filing a motion for dismissal premised on Smith's affidavit. Nevertheless, defendant's apparent acquiescence on that point did not erase his unequivocal request to represent himself, a request which the court had before it in writing. Because a denial of the right of self-representation would have been a structural error, automatically requiring reversal (*McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984); *People v. Averett*, 237 Ill. 2d 1, 13 (2010)), the court should have gone further by asking defendant outright if he still wanted to represent himself--thereby making it defendant's choice rather than the court's. The court could have phrased the question this way, for example: "Now,

Mr. Defendant, I have explained to you why representing yourself would be unwise. Nonetheless, that is your right if you still wish to do so. So, I need to ask you: Do you still wish to represent yourself in this case?" Then, if the defendant answered yes, the court should have allowed him to represent himself, provided that he understood the admonitions in Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

### III. CONCLUSION

We have no doubt that the trial court was sincere in its effort to dissuade defendant from making a foolish choice, but "[t]he right of a defendant to represent himself, when his choice is intelligently made, is as basic and fundamental as his right to be represented by counsel" (internal quotation marks omitted) (*Ward*, 208 Ill. App. 3d at 1080), and the sixth amendment leaves a court no option but to honor that choice after admonishing him pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), provided that the election of self-representation is not so late as to be disruptive (*Ward*, 208 Ill. App. 3d at 1084). Because the trial court in this case denied defendant his constitutional right to self-representation on the ground that the court viewed him as incapable of adequately representing himself, we reverse the conviction and remand this case for a new trial. See *Ward*, 208 Ill. App. 3d at 1085.

Reversed and remanded.