# Illinois Official Reports

## Appellate Court

---

### *People v. Albea*, 2017 IL App (2d) 150598

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS T. ALBEA, JR., Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-15-0598 |
| Filed<br>Modified upon denial of rehearing | December 15, 2017<br><br>January 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CF-3081; the Hon. Mark L. Levitt, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Michael J. Pelletier, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Patrick Delfino, Lawrence M. Bauer, and Mary Beth Burns, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

JUSTICE ZENOFF delivered the judgment of the court, with opinion. Presiding Justice Hudson and Justice Burke concurred in the judgment and opinion.


**OPINION**

¶ 1    Following a bench trial in the circuit court of Lake County, defendant, Thomas T. Albea, Jr., was convicted of first degree murder (720 ILCS 5/9-1(a)(2) (West 2010)) and sentenced to 33 years in prison. Defendant argues on appeal that his conviction must be reversed and a new trial ordered because the trial court committed plain error when it denied defendant's request to represent himself at trial. For the reasons that follow, we reverse and remand for a new trial.

¶ 2                                    I. BACKGROUND

¶ 3    On October 12, 2011, defendant was indicted on 14 counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2010)) and 2 counts of aggravated battery of a child (720 ILCS 5/12-4.3(a) (West 2010)). The charges stemmed from a September 6, 2011, incident in which defendant allegedly struck a minor, X.C., about his body, causing great bodily harm and death.

¶ 4    On January 4, 2012, retained counsel Robert P. Ritacca appeared on defendant's behalf. Ritacca represented defendant until July 15, 2014, when he moved to withdraw, citing defendant's dissatisfaction with his services. Defendant confirmed that he no longer wished to be represented by Ritacca and that he could not afford another attorney. The trial court allowed Ritacca to withdraw and appointed the public defender to represent defendant.

¶ 5    On July 16, 2014, assistant public defender Gillian Gosch appeared on behalf of defendant. The trial court continued the matter so that Gosch could review discovery. After several continuances, the matter was set for a jury trial on February 27, 2015.

¶ 6    On February 5, 2015, Gosch informed the trial court that defendant had told her that he wanted to represent himself. Defendant confirmed that he wished to proceed *pro se*. Thereafter, the following colloquy occurred:

> "THE COURT: [Defendant], I don't hesitate to tell you that that is a bad idea. There are a number of things that occur during the course of regular legal proceedings on a day-to-day basis, not to mention what occurs during the course of a trial that requires somebody with very particularized expert legal knowledge. Ms. Gosch is that kind of a person. I know that sometimes when you have discussions with your lawyers—and I know you have now had a couple—you might not always agree with what they have to say, and you don't have to always agree with what they have to say, but you do have to listen to them when you make judgments about what's best for you.
>
> So you do have a right to represent yourself, but it's something that is generally frowned upon because there is an old saying that a lawyer who represents himself or has himself for a client is a fool for both. Do you know what that means?
>
> THE DEFENDANT: No.
>
> THE COURT: It means it's not a good idea.
>
> How far did you go in school?

THE DEFENDANT: I got a GED.

THE COURT: You got a GED? And when did you get that?

THE DEFENDANT: 2011.

THE COURT: Okay. And have you had any jobs?

THE DEFENDANT: No.

THE COURT: And so tell me what it is or why it is you think that you should represent yourself in this case.

THE DEFENDANT: Well, I talked—I talked to her yesterday and I tried to get her to get a continuance as far as the trial is set.

THE COURT: Well, that's not up to her. You know that, right? So if she told you that I wasn't going to grant a continuance, she's probably basing that on her knowledge of working in my courtroom because she's worked in my courtroom for a long time now. So she knows that when a case gets to be as old as yours is and when it's set for trial she knows that just asking for a continuance without a really good reason generally isn't going to—going to fly. Okay?

THE DEFENDANT: All right.

THE COURT: So if she told you she couldn't get you a continuance, that was probably her accurate opinion about what's going on in this case. Do you know what I mean?

THE DEFENDANT: All right.

THE COURT: All right. What else?"

Defendant went on to complain that counsel had not shown him all of the discovery. The court told defendant that, although counsel could go through the discovery with him, she could not give it to him. Defendant stated, "That's not what I'm saying." Defendant reiterated his complaint that counsel had not reviewed the discovery with him. Thereafter, the following colloquy occurred:

"THE COURT: Well, I know you have been in front of me a lot, [defendant], so you know what you are charged with.

THE DEFENDANT: Exactly, exactly.

THE COURT: And you know what they're saying happened, right?

THE DEFENDANT: Yeah.

THE COURT: Okay. So a lot of what's contained in the documents is information that might only be useful to the attorney. I mean, if you—if you want me to continue the case for a short period of time, like later this week or early the following week, I can certainly accommodate that to give Ms. Gosch the opportunity to go through some more of the information with you, if that's what you like.

But if that's the only objection you have, I can tell you that my experience with Ms. Gosch is she happens to be an outstanding trial attorney, and she has representing [*sic*] people in the [*sic*] some of the most serious cases that I have ever had in front of me, and she is a very skilled and able trial lawyer. So if that's your only problem, I think you should probably try to work with her about this a little bit. Don't you think that?

THE DEFENDANT: I feel like I won't receive a fair trial due to the fact that we haven't really had time to go over nothing together except she came up here yesterday and that's all. That's all.

THE COURT: Well, why don't we try this. Why don't I give you some more time, like we will have you back in here February 17th or 18th. That will give you and Ms. Gosch another week and a half, two weeks to go over some of the information just to answer any questions that you have about what the evidence is and about what your options are.

But, you know, it sounds to me like you may have been frustrated because she was conveying to you what the State's offer was in the case. Would that maybe be accurate?

THE DEFENDANT: Not really.

THE COURT: Well, that's the situation. So if she tells you something, that that's what that is. She's allowed to tell you and she should tell you what her opinion is about that. Okay? You don't have to agree with her; she will tell you that. You still have an absolute right to have a trial in front of me or in front of a jury.

Right now, as a matter of fact, you're set for a jury trial, and we're going to start picking that jury actually not too long from now. I've got it in my calendar for evidence starting on March 2nd and jury selection on February 27th. So we've got, you know, your case right on track to get going. Okay?

THE DEFENDANT: Yeah.

THE COURT: So what I'll do is I'll give you time to talk to, you know, Ms. Gosch a little bit more, make sure that you understand exactly what it is that's going on in your case. And then if there is something else that you want to bring to my attention, then you can. Okay?

THE DEFENDANT: All right."

¶ 7　　At the next court date, on February 18, 2015, Gosch advised the trial court that she met with defendant the day before and reviewed additional documents with him but that defendant still wished to represent himself. Defendant confirmed that he wished to proceed *pro se*. The trial court advised defendant that he had the right to do so. The court then went on to state that the case involved "a number of relatively complex areas" and that much of the evidence "require[d] some expertise in dealing with it appropriately." The court inquired as to defendant's education and age. Defendant told the court that he was 21 years old and that he had a GED. The court asked defendant whether he had "any type of specialized education in the legal profession" or "any specialized education in terms of medical knowledge." When defendant responded no, the court stated, "And yet you stand in front of me and you tell me today that you think that you would be qualified to represent yourself in a case that would require some type of expertise in the law and in medicine?" After defendant responded in the affirmative, the court asked defendant why he wanted to represent himself. Defendant stated that "[he] didn't feel like [he] would receive a fair trial with Miss Gillian Gosch." Defendant stated that Gosch told him that he "had a 99.9 percent chance of losing the trial." He further complained that she just recently came to see him, that she should have come to see him sooner, and that she should have gone over more material with him. The court explained to defendant that Gosch was educated in the law and experienced in the particular type of case involved. The court explained that her opinion of the case did not excuse her from her

obligation to represent defendant zealously. The court stated, "If I thought for a minute that there was a lawyer that I appointed to represent you that wasn't going to do her job, I would excuse that lawyer in a heart beat [*sic*] because I would never allow you to go to trial if I thought the lawyer wasn't doing the job." The court also explained that counsel had a lot of preparation to do, which she could not do if she were spending time with defendant in jail. The court stated, "[Y]ou're not her partner in law. Okay? You're her client." The matter concluded with the following:

> "THE COURT: ***
>
> So is there anything else that she has not done, except for sharing with you an opinion that you don't like?
>
> THE DEFENDANT: No.
>
> THE COURT: So do you think that it would be a good idea to try to represent yourself just because you don't like what she's telling you?
>
> THE DEFENDANT: No.
>
> THE COURT: So we're going to go forward with Miss Gosch, and, if there's something that comes up, you'll bring it to my attention right away; right?
>
> THE DEFENDANT: Yes."

¶ 8 At the outset of the next court date, on February 26, 2015, Gosch informed the trial court that defendant wished to speak. Defendant then stated, "I was seeing if I can go pro se today." The court responded as follows:

> "Okay, [defendant]. We started to have this conversation a couple days ago. I thought you had seen the better of that decision. It is a very difficult thing to represent yourself. Even lawyers should never undertake representing themselves. You are far too close to the proceedings to make informed good decisions. As I told you I am going to be in court obviously during the entirely [*sic*] of the proceedings. If any problems come up and you feel there's something you need to bring to my attention even outside the presence of [the] jury I am going to let you do that, but in terms of the technical aspects of representing yourself at trial, knowing the proper objections to make, knowing the motions to make, you put yourself at an extreme disadvantage especially given your educational background, your life history that you indicated to me earlier, a very difficult in [*sic*] actually an impossible thing to do, [defendant].
>
> You wouldn't know how to preserve your own record. You wouldn't know the proper things to say or what to do. Don't you think you might wind up in a much worse situation than you're in if you made mistakes on the record if I were to let you represent yourself; isn't that right?"

Defendant agreed but then stated, "I'd rather take my chances representing myself."

¶ 9 Thereafter, the court again inquired as to defendant's age and education. The court told defendant that he had "no ability to file any type of motions." The court asked defendant whether he had gone through the file, whether he knew what it meant to conduct discovery, whether he knew how to make objections, whether he knew how to conduct jury selection, and whether he would be able to preserve the record. After defendant responded no, the court emphasized that Gosch was "an extremely experienced litigator and a very able trial attorney." The court stated, "You got to make sure you have the best representation going to trial examining and cross-examining doctors, medical reports, going through police officers [*sic*]."

The court continued, "Don't you think it's in your best interest at least to let her begin representing you, and if there is an issue bring it to my attention? That's what you need to do, [defendant]. If you want to have a fighting chance you need to have a lawyer. You are nodding your head yes. You think that's your best idea?" Defendant responded, "I still rather take my chances going pro se." The court asked whether defendant was prepared for trial tomorrow. When defendant responded that he was not, the court stated, "Well, how do you think I am going to let you go pro se?" The remainder of the conversation addressed defendant's complaints that counsel had not gone over "video segments" with him or contacted any of the witnesses provided by defendant's family. Arrangements were made for counsel to review the video with defendant the next morning with jury selection to follow. At the conclusion of the proceedings, the State advised the court that defendant had rejected its offer of 25 years for first degree murder. Gosch told the court that she had advised defendant to accept the offer.

¶ 10    The next day, February 27, 2015, defendant waived his right to a jury trial. The matter proceeded to a bench trial on March 2, 2015.

¶ 11    The evidence at trial established that, during the late evening of September 14, 2011, defendant was playing video games with three-year-old X.C., the son of defendant's girlfriend, Qa'Chelle, in the living room of Qa'Chelle's apartment while Qa'Chelle slept upstairs. Sometime after midnight, defendant told Qa'Chelle that X.C. did not seem well. Qa'Chelle discovered X.C. slumped over and not talking, and she took him to Vista Medical Center West. X.C. was airlifted to Children's Memorial Hospital where he died from massive internal bleeding. Medical testimony established that X.C. suffered from severe internal injuries in his abdominal area and that none of the injuries could have occurred more than a few hours before his arrival at the hospital. The injuries had been caused by at least three blows from a round object, possibly a fist. An autopsy revealed that X.C. suffered from additional injuries to his chest cavity.

¶ 12    The State's evidence further established that defendant made a series of statements to police. Defendant told police at the scene that X.C. had fallen and hit his head. Defendant later told detectives that he had punched X.C. in the abdomen one time because X.C. swore at the video game. Finally, after being told that it was impossible for X.C.'s injuries to have resulted from one blow, defendant told detectives that he had hit X.C. four or five times.

¶ 13    The judge found defendant guilty of first degree murder and found that the offense was exceptionally brutal and heinous. Defendant's motion for a new trial was denied. Following a sentencing hearing, the trial court sentenced defendant to 33 years in prison.

¶ 14    Defendant timely appealed.

## II. ANALYSIS

¶ 16    Defendant argues that the trial court erred in denying his request to represent himself at trial. Defendant acknowledges that he did not raise this issue in his motion for a new trial and thus has forfeited it. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, he argues that the issue is reviewable under the plain-error rule.

¶ 17    Under Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." The plain-error rule allows review of a forfeited claim of error if the error is clear or obvious and either (1) "the evidence is so closely balanced that the error alone

threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error" or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. McDonald*, 2016 IL 118882, ¶ 48. Defendant has the burden of persuasion to establish plain error. *Id.* If he fails to meet his burden, his forfeiture will be honored. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). The first step in plain-error review is to determine whether clear or obvious error is present. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 18    Defendant argues that the trial court erred in denying his unequivocal request to represent himself based on its opinion that proceeding without a lawyer was not in defendant's best interest. The State responds that the trial court properly exercised its discretion, as defendant's request was untimely and the trial court was protecting defendant's right to a fair trial.

¶ 19    "The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel." *People v. Wright*, 2017 IL 119561, ¶ 39 (citing *Faretta v. California*, 422 U.S. 806, 832-34 (1975)). Our supreme court has long recognized that the right to self-representation is "as basic and fundamental as [the] right to be represented by counsel." (Internal quotation marks omitted.) *Id.* "An accused may therefore waive his constitutional right to counsel as long as the waiver is voluntary, knowing, and intelligent." *Id.*

¶ 20    "It is 'well settled' that waiver of counsel must be clear and unequivocal, not ambiguous." *People v. Baez*, 241 Ill. 2d 44, 116 (2011). "In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *Id.*

¶ 21    "Although a court may consider the decision unwise, a defendant's knowing and intelligent election to represent himself must be honored out of that respect for the individual which is the lifeblood of the law." (Internal quotation marks omitted.) *Wright*, 2017 IL 119561, ¶ 39. "The requirement of knowing and intelligent choice 'calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.' " *Baez*, 241 Ill. 2d at 117 (quoting *People v. Lego*, 168 Ill. 2d 561, 564 (1995)).

¶ 22    Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) seeks to ensure that a defendant has such an awareness before his waiver is accepted.[1] Specifically, the rule provides:

"The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." *Id.*

---

[1]Along with the Rule 401(a) admonishments, it is desirable for the court to inform the defendant of the 10 matters set forth in *People v. Ward*, 208 Ill. App. 3d 1073, 1081-82 (1991).

"[S]ubstantial compliance [with Rule 401(a)] will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." (Internal quotation marks omitted.) *Wright*, 2017 IL 119561, ¶ 41.

¶ 23 The trial court's denial of a defendant's request to waive counsel and proceed *pro se* is reviewed for an abuse of discretion. *Baez*, 241 Ill. 2d at 116. The application of an incorrect legal standard constitutes an abuse of discretion. *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 21.

¶ 24 Here, defendant requested to represent himself at three different hearings, and there is no doubt in our minds that each request was unequivocal and unambiguous. However, rather than admonishing defendant under Rule 401(a) and determining whether defendant's request was voluntary, knowing, and intelligent, the trial court focused exclusively on defendant's ability to represent himself. This was error. At the hearing on February 5, 2015, the court told defendant that the request was "a bad idea" and that a trial required "somebody with very particularized expert legal knowledge." The court asked defendant about his education and employment experience. The court also inquired as to why defendant wanted to represent himself. When defendant told the court that counsel had not reviewed discovery with him, the court told defendant that it would give him time to talk to counsel and address his concerns about his case. At the next court date, defendant persisted in his request to proceed *pro se*. In response, the court again inquired into defendant's educational background. The court asked defendant whether he had "any type of specialized education in the legal profession" or "any specialized education in terms of medical knowledge" and whether he felt that he was qualified to represent himself. Although defendant agreed, at the end of the hearing, when the court stated that "we're going to go forward with Miss Gosch," at the outset of the next court date, defendant reiterated his request to proceed *pro se*. The court once again emphasized that proceeding *pro se* would place defendant "at an extreme disadvantage," and it focused on defendant's lack of legal knowledge. Although defendant agreed with the court, he stated, "I'd rather take my chances representing myself."

¶ 25 The State attempts to justify the trial court's refusal to allow defendant to proceed *pro se* by arguing that the court was "protecting defendant's right to a fair trial," given defendant's age, education, and lack of employment history. The State cites *Indiana v. Edwards*, 554 U.S. 164 (2008), which holds that a court can refuse to allow a severely mentally ill defendant to proceed *pro se* if the court is convinced that he cannot competently represent himself. *Id.* at 177-78. Here, however, there was no indication that defendant was severely mentally ill. Moreover, "a defendant need not possess the skill and experience of a lawyer in order to choose self-representation competently and intelligently." *Lego*, 168 Ill. 2d at 564. Indeed, the denial of a defendant's request to proceed *pro se* based on a perceived lack of legal knowledge and ability "has been repeatedly rejected." *Woodson*, 2011 IL App (4th) 100223, ¶ 23. If a defendant's waiver of his right to counsel is made voluntarily, knowingly, and intelligently, a court must accept that waiver, even where such a decision is unwise or likely to be a detriment to the defendant. See *Baez*, 241 Ill. 2d at 116.

¶ 26 The State also argues that defendant's request was untimely. According to the State, although the trial was still three weeks away, defendant's request was untimely because "meaningful proceedings" had already occurred. In support, the State relies on *People v. Burton*, 184 Ill. 2d 1 (1998). In *Burton*, while represented by counsel, the defendant pleaded

guilty to first degree murder. *Id.* at 6. Later, during his capital sentencing hearing, he made certain statements that he claimed on appeal indicated a desire to proceed *pro se*. *Id.* at 20-21. The supreme court held that the defendant's statements were equivocal and did not amount to a request to proceed *pro se*. *Id.* at 24. The court also went on to "note the timing of this exchange" and found that, even if the defendant had made an unequivocal request, the trial court had discretion to deny it because it was made after the guilty plea, a "meaningful proceeding[ ]." *Id.* at 25. Here, however, unlike in *Burton*, defendant made an unequivocal request three weeks before trial. Moreover, the trial court never ruled that the request was untimely. The only proceedings held prior to the request were the arraignment and status hearings on discovery; no "meaningful proceedings" had yet occurred.

¶ 27    Based on the foregoing, we find that the trial court clearly abused its discretion when it denied defendant's unequivocal and unambiguous request to represent himself, based on its belief that the request was not in defendant's best interest, rather than determining whether defendant's request was voluntarily, knowingly, and intelligently made.

¶ 28    Having found clear error, the question becomes whether the error is reversible plain error. Defendant contends that he has established reversible plain error under the second prong of the plain-error rule. We agree. As noted, under the second prong of the plain-error rule, after establishing error, the defendant must show that "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *McDonald*, 2016 IL 118882, ¶ 48. The supreme court has "equated second-prong plain error with structural error." *People v. Clark*, 2016 IL 118845, ¶ 46. Structural error is an error " 'affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Neder v. United States*, 527 U.S. 1, 8 (1999) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). In *Neder*, the Supreme Court recognized that the erroneous denial of self-representation at trial is structural error. *Id.* (citing *McKaskle v. Wiggins*, 465 U.S. 168 (1984)). Given our conclusion that the trial court erred in denying defendant his right to self-representation at trial, we hold that the error constitutes second-prong plain error.

¶ 29                                    III. CONCLUSION

¶ 30    Based on the foregoing, we reverse the judgment of the circuit court of Lake County, and we remand for a new trial. In so doing, we note that the evidence was sufficient to prove defendant guilty of first degree murder beyond a reasonable doubt, and thus a retrial will not violate defendant's right to be free from double jeopardy. See *People v. Jiles*, 364 Ill. App. 3d 320, 330-31 (2006).

¶ 31    Reversed and remanded.