2020 IL App (1st) 181615-U

No. 1-18-1615

Order filed November 20, 2020

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 CR 17896 |
| | ) | |
| JOSHUA HARGROW, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE GRIFFIN delivered the judgment of the court.
Justices Harris and Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm defendant's conviction for aggravated battery of a correctional institution employee over his contention that the trial court erred in denying his request to represent himself at trial.

¶ 2    Following a jury trial, defendant Joshua Hargrow was convicted of aggravated battery of a correctional institution employee (720 ILCS 5/12-3.05(d)(4) (West 2016)) and sentenced to six years and six months' imprisonment. On appeal, he contends that the trial court abused its

discretion when it denied his request to represent himself at trial. For the following reasons, we affirm.

¶ 3    Prior to this case, defendant was in custody for another case in which he was charged with first-degree murder. After defendant allegedly kicked a corrections officer in October 2017, he was charged by indictment with six counts of aggravated battery and one count of resisting or obstructing a peace officer.

¶ 4    The State and defense counsel discussed a plea deal that would potentially resolve both cases. At a March 20, 2018 hearing, defense counsel acknowledged that defendant received an offer from the State two weeks earlier, but defendant requested more time to decide whether to accept that offer. The court granted a continuance until March 30, 2018.

¶ 5    At the March 30, 2018 hearing, the State acknowledged its offer to dismiss the instant case if defendant agreed to a 25-year sentence in the murder case. Defendant informed the court that he did not wish to accept the offer because he felt "rushed." The State then indicated that it wished to proceed to trial on the instant case. After the court stated that it would set this case for a jury trial, defendant stated that he felt "like I'm being rushed and not receiving the absolute amount of time that I need to deal with this situation." Defendant then indicated a desire to represent himself:

> "THE DEFENDANT: Considering that [the public defender], I don't believe that he's representing me to the best of his abilities, I can lose my own case considering that he's already lost two motions * * * .

> THE COURT: So you want to go to – we're going to go to trial on the aggravated battery on a peace officer, do you understand that right now? So I'm going to set that down.

THE DEFENDANT: So what I'm saying is, if possible, I would like to go *pro se* on this more so than having an attorney if I'm obligated to refuse –

THE COURT: Did we give him admonishments about going *pro se*?

THE DEFENDANT: The whole time –

THE COURT: Excuse me right now. Listen to me, I am talking, Mr. Hargrow, give me the courtesy of explaining certain things and whether you have your admonishments or the direction about proceeding *pro se*.

Do you understand that?

THE DEFENDANT: I hear you."

The court then told defendant: "You do have a constitutional right to defend yourself, but you have to be in a position to understand the charges and the consequences of the act of defending yourself."

¶ 6    After the State indicated its desire to proceed on all seven counts, the court read the first count of the indictment and asked defendant if he understood the count. Defendant responded: "To the best of my abilities." After the court read the second count, the following colloquy ensued:

"THE COURT: Do you understand that, that's the second count against you, do you understand that, Mr. Hargrow?

THE DEFENDANT: I'm –

THE COURT: See, if you don't understand it, then you can't defend yourself.

THE DEFENDANT: I'm doing my best to understand what you're saying, but by you speaking so fast and me not being a lawyer, I would need time to actually

read. This is what I'm saying about being rushed, for the whole two and a half years –

THE COURT: This is like a starting line, as trials are, if you don't want to accept responsibility, your case on the murder case has been here approximately three years * * * and you're saying you're being rushed, that's not rational.

Listen to me, so this is aggravated battery on Count [III]. If you say you can't understand these things, you're going to the psychiatrist again because these are common law languages, this is people that use this type of language in courts and most of it on the street."

¶ 7    After a brief recess, the State informed the court that it would proceed on counts I, II, and III. The court advised defendant of the allegations in those counts and informed him that each was a Class 2 felony punishable by three to seven years' imprisonment, with two years mandatory supervised release. The court then informed defendant:

"You also could be given probation up to four years or conditional discharge up to four years, and you could be given periodic imprisonment up to 30 months, and you could be fined up to $25,000 on these counts also.

Do you understand that?

Mr. Hargrow, here's the little catch that you're getting yourself into, if you say you don't understand these, then you wouldn't be qualified to represent yourself, do you understand that? So that is the situation.

The main thing is, it's not whether you have the requisite to pass the intelligence, the thing is are you knowingly giving up your right to counsel. It's not whether you have the ability to conduct your own defense.

So if you say you don't understand these charges, and we've had a fitness hearing on this already, then I'm left with the conclusion that you're not in a position to waive your right to an attorney and represent yourself; do you understand that?

So do you understand the charges that I read that are against you?"

Defendant responded: "To the best of my abilities, yeah."

¶ 8      In response to further questions from the court, defendant stated that he was 31 years old, was a high school graduate, and could read and write. Asked if he had psychiatric treatment, defendant told the court that he was in the "housing unit for psychiatric inmates." Defendant answered negatively when the court asked if he had been on trial before, and whether he was familiar with rules of evidence. The following colloquy then ensued:

"THE COURT: Here is the thing, and again, the question is not whether you have the ability to defend yourself in a competent manner, it's whether you know you have the ability to give up your right to be represented by counsel.

These rules and this evidence has to be followed in this courtroom just as if you were a lawyer. There's no exceptions that could be made because you're defending yourself and you don't know these rules.

The problem here is that a person unfamiliar with the legal procedures, they allow the prosecutors an unfair advantage by failing to make objections to inadmissible evidence.

Do you understand that?

THE DEFENDANT: No.

THE COURT: All right. That's good. And then you may not use effective uses of such rights on *voir dire* examination of jurors.

Do you understand that?

THE DEFENDANT: No.

THE COURT: And you may make tactical decision that produce consequences or acts or events that you didn't foresee.

Do you understand that?

THE DEFENDANT: I'm not a lawyer, so the legal terms that you're using, I don't understand.

THE COURT: Saying that you might ask a question that you might get an answer that you did not intend that might hurt your case. That's what I'm saying.

Do you understand that?

THE DEFENDANT: That could be true.

THE COURT: These are some of the things, all right. If you go by yourself, which they call *pro se*, you're not allowed to complain about that you mishandled the case.

Do you understand that?

THE DEFENDANT: That could be true.

THE COURT: And there's a saying that only a fool has an attorney who would represent himself. So there are certain considerations that if you represent yourself as an attorney and as a person accused in this case, you might miss certain elements or issues in this case.

Do you understand that?

THE DEFENDANT: That's true.

THE COURT: Okay. And you're not going to be given any greater time or extra time for preparation or even greater time in the library, do you understand, if you just represent yourself?

THE DEFENDANT: Actually I'm not receiving any time in the library.

THE COURT: Well, that's true right now, so you're not going to get any extra time.

Do you understand that?

THE DEFENDANT: They have me housed in a facility where they only deal with mental patients, patients with mental illness, so I don't see how I can –

THE COURT: So are you mentally ill?

THE DEFENDANT: According to their computer.

THE COURT: According to yourself. You know better than anybody else.

THE DEFENDANT: I don't feel that I'm crazy. I said that someone is on military equipment all day every day projecting everything that I say, as well as your public defender.

THE COURT: Okay. It says – you know, the other thing is that the difference between representing yourself and having a lawyer is that you might not be aware of possible defenses that a lawyer would be aware of. Do you understand that?

THE DEFENDANT: That could be true.

THE COURT: And that you might not be able to have consultations with the prosecutor considering reducing the charge or lesser penalties. Do you understand that also?

THE DEFENDANT: No, I do not.

THE COURT: Okay, that's good. In the event of a conviction, by presenting the Court matters which might lead – you might not even be able to present in mitigation, factors that should be presented so that you would get a lesser sentence. Do you understand that?

THE DEFENDANT: No."

¶ 9 The court then remarked that, given defendant had not been on trial before and "doesn't understand many of the functions of trial attorneys," he was not qualified to give up his right to an attorney. The court concluded:

"I find that [defendant] does not have the requisite capacity based on the lack of contact with the criminal law system, also he's never been on trial as an accused before, he does not know the rules of evidence, he does not know procedures, and at this time I find that he's not making a knowing and competent waiver of the right of counsel."

¶ 10    The State proceeded to trial only on aggravated battery based on physical contact of an insulting or provoking nature (count I) and aggravated battery based on knowingly causing bodily harm (count II). The State nol-prossed the remaining counts.

¶ 11    At trial, correctional officer Gregory Newsome testified that on October 19, 2017, he attempted to transport defendant from one tier of Cook County jail to another. Defendant refused to comply, and Newsome noticed an object protruding from the back of defendant's shirt. Newsome and other officers placed defendant against a wall. Newsome removed an item from defendant, placed that item on a desk, and then walked back toward defendant. As Newsome approached, defendant kicked him in the chest and stomach. Newsome suffered two bruised ribs. He identified video footage of the incident, which was published to the jury.

¶ 12    The jury found defendant guilty of both count I and count II. After the trial court denied defendant's posttrial motion, it merged count I into count II, and sentenced defendant to six years and six months' imprisonment.

¶ 13    On appeal, defendant's sole contention is that the trial court erred in denying his request to represent himself at trial. In setting forth this argument, defendant acknowledges that the issue was forfeited because it was not raised in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 189 (1988). Nonetheless, he urges that we review the issue under the second prong of the plain error doctrine, which permits a reviewing court to consider unpreserved error when "a clear or obvious error occurred and the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. McDonald*, 2016 IL 118882, ¶ 48. This court has found that the erroneous denial of a defendant's request for self-representation constitutes second-prong plain error. *People*

*v. Albea*, 2017 IL App (2d) 150598, ¶ 28. However, "[t]he first step in a plain error analysis is to determine whether error occurred." *McDonald*, 2016 IL 118882, ¶ 48. Thus, we proceed to examine whether the trial court's denial of defendant's request to proceed *pro se* constituted error. For the reasons that follow, we find no error.

¶ 14 Our supreme court has recognized that "The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees an accused in a criminal proceeding both the right to the assistance of counsel and the correlative right to proceed without counsel. [Citation.]" *People v. Wright*, 2017 IL 119561, ¶ 39. The right to self-representation is as basic and fundamental as the right to be represented by counsel. *Id.* However, "[i]n order to represent himself, a defendant must knowingly and intelligently relinquish his right to counsel. [Citations.]" *People v. Baez*, 241 Ill. 2d 44, 115-16 (2011); see also *People v. Haynes*, 174 Ill. 2d 204, 235 (1996) ("An accused may waive his constitutional right to counsel as long as the waiver is voluntary, knowing, and intelligent.").

¶ 15 Under Illinois Supreme Court Rule 401(a), a trial court shall not permit waiver of counsel without first addressing the defendant personally in open court and determining that he understands the nature of the charge; the minimum and maximum sentence prescribed by law; and his right to appointed counsel. Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Waiver of the right to counsel must be "clear and unequivocal, not ambiguous." *Baez*, 241 Ill. 2d at 116 (citing *People v. Burton*, 184 Ill. 2d 1, 21 (1998)). "In determining whether a defendant's statement is clear and unequivocal, a court must determine whether the defendant truly desires to represent himself and has definitively invoked his right of self-representation." *Id.* (citing *Burton*, 184 Ill. 2d at 22).

¶ 16   "Although a court may consider a defendant's decision to represent himself unwise, if his decision is freely, knowingly, and intelligently made, it must be accepted. [Citations.]" *Baez*, 241 Ill. 2d at 116-17. While a defendant "need not possess the skill and experience of a lawyer in order to choose self-representation competently and intelligently, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." (Internal quotation marks omitted.) *Id.*

¶ 17   "The requirement of a knowing and intelligent choice calls for nothing less than a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. [Citations.]" *People v. Lesley*, 2018 IL 122100, ¶ 51; see also *Baez*, 241 Ill. 2d at 116. The determination of whether there has been an intelligent waiver of the right to counsel depends upon the "particular facts and circumstances of each case, including the background, experience, and conduct of the accused. [Citation.]" *Lesley*, 2018 IL 122100, ¶ 51; see also *Baez*, 241 Ill. 2d at 116. "The entire record should be considered in determining whether the waiver was knowingly and understandingly made." *Lesley*, 2018 IL 122100, ¶ 51 (citing *People v. Redd*, 173 Ill. 2d 1, 21 (1996)).

¶ 18   "On review, the trial court's decision on a defendant's election to represent himself will be reversed only if the court abused its discretion." *People v. Hunt*, 2016 IL App (1st) 132979, ¶ 16 (citing *Burton*, 184 Ill. 2d at 25). "An abuse of discretion occurs when the court's ruling is arbitrary and without a logical basis. [Citation.]" *Id.* ¶ 16. This court has also recognized that a trial court abuses its discretion when it applies the incorrect legal standard in denying a defendant's request to represent himself. *Albea*, 2017 IL App (2d) 150598, ¶ 23; *People v. Woodson*, 2011 IL App (4th) 100223, ¶ 21.

¶ 19    In arguing that the trial court abused its discretion in denying his request to proceed *pro se*, defendant suggests that the trial court applied the wrong standard, and erroneously based its decision on his level of legal ability. See *People v. Simpson*, 172 Ill. 2d 117, 137-38 (1996) (recognizing that "the level of a defendant's competency as a lawyer is not a measure of his competency to waive counsel."). He argues that, although the court articulated the correct standard, it improperly relied on his lack of legal expertise to deny his waiver of counsel. See *Woodson*, 2011 IL App (4th) 100223, ¶ 23 (holding that trial court abused its discretion in denying the defendant's request to proceed *pro se* "because it believed that defendant did not 'have the legal knowledge and ability' to represent himself," noting "[t]his rationale for denying a defendant his right to self-representation has been repeatedly rejected."). In support of this argument, defendant emphasizes the trial court's questions and comments regarding his lack of courtroom experience, unfamiliarity with rules of evidence and procedure, and whether he understood certain functions of counsel that he would waive by proceeding *pro se.*

¶ 20    After reviewing the totality of the court's inquiries and reasoning, we find that the court did not abuse its discretion in denying defendant's request to proceed *pro se*. First, the record shows that, contrary to defendant's argument, the trial court repeatedly and explicitly recognized that the governing inquiry was *not* defendant's legal expertise or ability to defend himself. The court told defendant that the inquiry was "are you knowingly giving up your right to counsel" and "not whether you have the ability to conduct your own defense." At another point, the court again emphasized: "the question is not whether you have the ability to defend yourself in a competent manner." Although admittedly the trial court questioned defendant about his legal experience and familiarity with the trial process and functions of an attorney, the court was entitled to ask such

questions in the course of reviewing the "background, experience, and conduct of the accused" in deciding whether his waiver was knowing and intelligent. *Lesley,* 2018 IL 122100, ¶ 51; see also *Simpson*, 172 Ill. 2d at 133 ("direct questioning regarding defendant's schooling is only one of many possible means to assess a defendant's ability to understand the nature of the right he was waiving. A defendant's background, experience, and conduct are all factors to consider when determining if a valid waiver of counsel has been made. [Citation.]").

¶ 21     Further, as the State's brief points out, several of the trial court's questions mirrored admonitions regarding *pro se* representation that were approvingly discussed in *People v. Ward*, 208 Ill. App. 3d 1073 (1991). There, this court agreed that it would be "desirable" for a trial court to inform a defendant that, *inter alia*, (1) presenting a defense "requires adherence to various technical rules governing the conduct of a trial"; (2) that a non-lawyer might fail to object to inadmissible evidence and may "make tactical decisions that produce unintended consequences"; (3) that a *pro se* defendant "will not be allowed to complain on appeal about the competency of his representation"; (4) that a *pro se* defendant "will receive no special consideration" or "extra time for preparation"; and (5) that "a lawyer can render important assistance (a) by determining the existence of possible defenses to the charges against defendant, (b) through consultation with the prosecutor regarding possible reduced charges or lesser penalties, and (c) in the event of conviction, by presenting to the court matters which might lead to a lesser sentence." *Id.* at 1082 (citing W. LaFave and J. Israel, 2 Criminal Procedure §§11.5 (a), (b), (c), at 42-45. (1984)). Here, the record shows the trial court informed defendant of exactly these matters at length.

¶ 22     Defendant's reply brief responds that, while it is proper to inform a defendant of such matters, in this case it was improper for the trial court to ask if he understood such admonitions,

in order to determine how skillful the defendant would be in representing himself. See *Ward*, 208 Ill. App. 3d at 1084 (emphasizing that the inquiry into a defendant's "ability to make a knowing and intelligent waiver of his right to counsel" is distinct from "an inquiry into defendant's ability to do an appropriate job defending himself at trial.").

¶ 23    However, our review of the record does not convince us that the court's questioning of defendant regarding his familiarity with the legal system or the potential disadvantages of *pro se* representation, is tantamount to the court having applied the wrong standard. Rather, the trial court's questions were properly directed towards evaluating whether defendant fully understood the consequences of proceeding *pro se.* The court's inquiries were consistent with the principle that a defendant "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Baez*, 241 Ill. 2d at 117. Several of defendant's responses indicated that he did not fully understand the risks and disadvantages of proceeding without counsel, supporting the court's conclusion that he "doesn't understand many of the functions of trial attorneys" and thus was "not qualified to give up his right to an attorney." Given this record, the trial court could rationally conclude that defendant lacked a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it," as necessary for a knowing and intelligent waiver. See *id.* As such, the court's decision was not "arbitrary and without a logical basis." *Hunt*, 2016 IL App (1st) 132979, ¶ 16. Accordingly, the trial court did not abuse its discretion in denying defendant's request to represent himself.

¶ 24    Defendant nevertheless suggests that in this case the trial court "made substantially the same inquiry" that was rejected by this court in *People v. Albea*, 2017 IL App (2d) 150598. In

*Albea*, the defendant requested to represent himself at three different hearings. "However, rather than admonishing defendant under Rule 401(a) and determining whether defendant's request was voluntary, knowing, and intelligent, the trial court focused exclusively on defendant's ability to represent himself." *Id.* ¶ 24. This court found that the trial court "clearly abused its discretion" when it denied defendant's request to represent himself "based on its belief that the request was not in defendant's best interest, rather than determining whether defendant's request was voluntarily, knowingly, and intelligently made." *Id.* ¶ 27.

¶ 25     We find *Albea* distinguishable**.** First, unlike the situation in *Albea*, the record in this case is clear that the court admonished defendant pursuant to Supreme Court Rule 401(a). More important, we cannot say the trial court "focused exclusively on defendant's ability to represent himself," as was the case in *Albea.* 2017 IL App (2d) 150598, ¶ 24. Rather, viewing the totality of the court's inquiries and reasoning, we find that the court properly considered defendant's ability to comprehend the significance of the right to counsel, *i.e.*, whether he could make a knowing and intelligent waiver, and reasonably concluded that he could not. In sum, we find that the trial court applied the proper legal inquiry in declining defendant's request to proceed *pro se*.

¶ 26     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 27     Affirmed.