NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190301-U

NO. 4-19-0301

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 5, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Vermilion County |
| GWENDOLYN HAMPTON, | ) | No. 18CF402 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nancy S. Fahey, |
| | ) | Judge Presiding. |

_____

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's judgment because the court's
instructions were proper and trial counsel was not ineffective.

¶ 2        In July 2018, the State charged defendant, Gwendolyn Hampton, with one count of

aggravated battery to a police officer (720 ILCS 5/12-3.05(d)(4) (West 2016)) and one count of

resisting or obstructing a police officer (*id.* § 31-1(a)). The charges alleged generally that on July

8, 2018, defendant jumped on the back of Ryan Sparling, a police officer, while he was attempting

to arrest defendant's sister, Terry Hampton. The second count was dismissed prior to trial.

¶ 3        In February 2019, the trial court conducted defendant's jury trial, and the jury found

defendant guilty. In March 2019, the court sentenced defendant to two years of probation.

¶ 4        Defendant appeals, arguing that (1) the trial court erred by failing to correctly

admonish potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012),

(2) trial counsel was ineffective by submitting Illinois Pattern Jury Instructions, Criminal, No. 3.11 (approved Oct. 17, 2014) (hereinafter IPI Criminal No. 3.11) but omitting the portion of that instruction relating to signed statements, and (3) the trial court erred by directing the jury to not ask questions during deliberations. We disagree and affirm the trial court.

¶ 5                                     I. BACKGROUND

¶ 6          In July 2018, the State charged defendant, Gwendolyn Hampton, with one count of aggravated battery to a police officer (720 ILCS 5/12-3.05(d)(4) (West 2016)) and one count of resisting or obstructing a police officer (*id.* § 31-1(a)). The charges alleged generally that on July 8, 2018, defendant jumped on the back of Ryan Sparling, a police officer, while he was attempting to arrest defendant's sister, Terry Hampton. That second count was dismissed prior to trial.

¶ 7                               A. Defendant's Jury Trial

¶ 8          In February 2019, the trial court conducted defendant's jury trial.

¶ 9                          1. *Jury Selection and Admonishments*

¶ 10         During *voir dire*, the trial court admonished the jury as follows:

          "Now, I have a series of questions I need to ask you individually, so please listen carefully and then I will go down the row. Do you understand and accept the following principles:

          A person accused of a crime is presumed to be innocent of the charges against her. That presumption of innocence stays with the Defendant throughout the trial and is not overcome unless, from all the evidence, you believe the State proved her guilt beyond a reasonable doubt. The State has the burden of proving the Defendant's guilt beyond a reasonable doubt. Do you understand and accept those principles?

The Defendant does not have to prove [her] innocence; the Defendant does not have to present any evidence on [her] own behalf; the Defendant does not have to testify if she does not wish to. If the Defendant does not testify, this cannot be considered by you in any way in arriving at your verdict. If the Defendant does testify, you should judge her testimony in the same manner as you would judge the testimony of any other witness. Do you understand and accept those—the—those principles?"

¶ 11 Each time the trial court asked the question, "Do you understand and accept those principles," the jurors responded in the affirmative.

¶ 12                                    2. *The Evidence*

¶ 13 Ryan Sparling, a Danville police officer, testified that on July 8, 2018, he received a call about multiple people fighting at 941 North Hazel Street in the front yard. He went to the location of the fight and observed six other police officers at the scene along with several sheriff's deputies. Sparling saw two women begin to fight. Sparling attempted to break up the fight and Terry Hampton hit him. Sparling then attempted to arrest Hampton, but two women jumped on Sparling's back. Sparling identified defendant as one of those women who jumped on his back. During cross-examination, Sparling acknowledged that in his report he stated, "[W]hile attempting to detain Terry Hampton, Gwendolyn Hampton and another unknown female black were on Officer Sparling's back attempting to pull him off of Terry Hampton."

¶ 14 Jacob Troglia, a Danville police officer, testified that he went to Sparling's location and observed 20 people in a front yard. He saw a woman in a red shirt strike Sparling. When Sparling attempted to arrest that individual, two women jumped on Sparling's back. On

cross-examination, Troglia acknowledged that in his report he stated, "[A] female identified as Gwendolyn Hampton and another black female jumped on top of Sparling as Sparling was falling to the ground with the girl in the red shirt."

¶ 15       Donna Hampton, defendant's sister, testified that she saw defendant get hit in the mouth by a man named Yuri. Donna saw a fight, and Terry Hampton tried to break it up. Terry fell onto Sparling. Defendant went to try to help Terry get up from the ground. Donna did not see defendant jump onto any officer and said that defendant only touched Terry.

¶ 16       Defendant testified that she saw 20 people outside her mother's house and she tried to tell them to leave. Yuri hit her in the mouth, and defendant began bleeding so she went back inside the house. Yuri and her brother began fighting so defendant went back out to try to get her brother inside the house. Defendant saw about six or seven officers arrive. She saw Sparling slam Terry into the ground. Defendant said she then helped Terry up but did not jump on Sparling. Terry fell onto Sparling's back.

¶ 17                    3. *Jury Instructions and Deliberations*

¶ 18       During a break between the State's case-in-chief and defendant's case-in-chief, the trial court discussed jury instructions with the parties. During that discussion, defense counsel said, "Judge, I would note that based on the testimony of the officer, I need to get an additional prior inconsistent statement instruction put together." Later in the discussion, defense counsel noted this was because, "His report was [defendant] and another black female jump on top of Sparling as Sparling was falling to the ground with the girl in the red shirt; whereas, the testimony he presented today was that they caused him to fall, not as he was falling." The trial court replied, "Just call and order the jury instruction and I'll make a determination at a sidebar on *** this jury instruction at the appropriate time."

¶ 19        Before closing arguments, the trial court and the parties further discussed the jury instructions. The trial court confirmed with the State that it had received IPI Criminal No. 3.11 from defendant. The State noted she had and noted they may make an argument based upon the instruction as well. The court then said that the instruction would be allowed and said it would be placed with the other instructions, to which defense counsel said, "That would be fine, judge."

¶ 20        Before the jury was sent to deliberate, the trial court instructed the jury as follows:

"The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind ordinarily may be considered by you only for the limited purpose of deciding the weight to be given the testimony you hear from the witness in this courtroom. However, you may consider a witness's earlier inconsistent statement as evidence without this limitation when the statement narrates, describes or explains an event or condition the witness had personal knowledge of, and the witness acknowledged under oath that he made the statement, or the statement was accurately recorded by a tape recorder, videotape recording, or a similar electronic means of sound recording."

¶ 21        The court also instructed the jury as follows:

"Members of the jury, you are in the care of Paul, who is my bailiff. Paul has been instructed by this Court not to permit any person to speak or to otherwise communicate with you on any subject with the trial except with the permission of the court. I am directing Paul not to communicate with you on any subject connected with the trial and I direct you not to ask him any questions pertaining thereto. When you have reached your verdict, notify Paul, who will then inform the

court."

¶ 22    The jury found defendant guilty of aggravated battery.

¶ 23                        B. Sentencing

¶ 24    In March 2019, the trial court sentenced defendant to two years of probation.

¶ 25    This appeal followed.

¶ 26                        II. ANALYSIS

¶ 27    Defendant appeals, arguing that (1) the trial court erred by failing to correctly admonish potential jurors pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), (2) counsel was ineffective by submitting IPI Criminal No. 3.11 but omitting the portion of that instruction relating to signed statements, and (3) the trial court erred by directing the jury to not ask questions during deliberations. We disagree and affirm the trial court.

¶ 28        A. The Trial Court's Admonishments Were Not Reversible Error

¶ 29    Defendant contends that the trial court plainly erred by not admonishing the jurors pursuant to the precise question-and-response framework required by Illinois Supreme Court Rule 431(b). We agree the court erred, but we disagree that this amounts to plain error and therefore do not reverse.

¶ 30    Under Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), the circuit court must admonish each potential juror on four constitutional principles that are essential to a fair trial. Also, the court must ask each potential juror if he or she understands and accepts those principles. The rule provides as follows:

          "The court shall ask each potential juror, individually or in a group, whether that

          juror understands and accepts the following principles: (1) that the defendant is

          presumed innocent of the charge(s) against him or her; (2) that before a defendant

can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." *Id.*

¶ 31 Because defendant did not raise this issue in the trial court, she has forfeited this issue on appeal. *People v. Belknap*, 2014 IL 117094, ¶ 47, 23 N.E.3d 325. Nonetheless, defendant attempts to salvage this claim through the plain error doctrine.

¶ 32 We addressed this exact issue in *People v. Hartfield*, 2020 IL App (4th) 170787, ¶ 59, in which we stated the following:

"The *** error in the *Zehr* admonitions and inquiries, according to defendant, was lumping the four principles together instead of reciting one principle at a time and asking the potential jurors if they understood and accepted that principle. If indeed this was an error, it was not a clear or obvious one. Nothing in the text of Rule 431(b) clearly requires delivering the admonitions piecemeal with the inquiries interspersed. As defendant admits, the appellate court is divided on the question of whether it is necessary to do so. *Cf. People v. Willhite*, 399 Ill. App. 3d 1191, 1196-97, [927 N.E.2d 1265, 1270] (2010) (observing that 'Rule 431(b) has no requirement that the trial court ask separate questions of the jurors about each individual principle'); *People v. Othman*, 2019 IL App (1st) 150823, ¶ 60, [143 N.E.3d 32] (holding that, after stating each of the four *Zehr* principles, the

circuit court must ask the potential jurors if they understand and accept that principle, necessitating eight inquiries). Because it was not a clear or obvious error for the circuit [court] to follow *Willhite* over *Othman*, the procedural forfeiture of this issue will be honored. See *People v. Albea*, 2017 IL App (2d) 150598, ¶ 17, [95 N.E.3d 1220]."

¶ 33 Defendant "acknowledges that this Court has recently held that a trial court did not plainly err when it collapsed the four Rule 431(b) principles into one statement of law and questioned the jurors on those principles in a factually similar admonishment in *People v. Kinnerson*, 2020 IL App (4th) 170650, but includes the issue in this appeal for preservation, as the question is currently being briefed before the Illinois Supreme Court in *People v. Birge*, ISC Case Number 125644."

¶ 34 In other words, defendant does not dispute that this court's precedent resolves this issue in favor of the State. We accept defendant's concession and conclude that for the same reasons we articulated in *Kinnerson* and *Hartfield*, the trial court did not plainly err.

¶ 35 However, despite our conclusion that the trial court did not plainly err, we must express again that failure to comply with Rule 431(b) is a terrible mistake—not because of how grave the error is, but because of how *easy* it is to comply. Collapsing the four Rule 431(b) principles, as the court did in this case, while not plain error, is still incorrect and should never happen. Several months ago, in *People v. Neal*, 2020 IL App (4th) 170869, ¶¶ 188-93, 150 N.E.3d 984, we stated the following:

"The issue in this case—namely, the failure of the trial court to strictly comply with Rule 431(b)—should never have arisen, and, indeed, *should never arise in any case*. That is because there is no excuse for a trial judge to not strictly

comply with the clear and explicit directions the supreme court has provided for trial courts when admonishing prospective jurors.

Being a trial judge can be a difficult job, often requiring careful study to properly apply difficult legal concepts and to ensure that a jury is properly instructed on the law. However, admonishing prospective jurors pursuant to Rule 431(b) is not a difficult task.

It could hardly be easier.

*Thirty-six years ago*, the supreme court in *People v. Zehr*, 103 Ill. 2d 472, 477, 469 N.E.2d 1062 (1984), set forth four principles (now known as the *Zehr* principles) about which trial courts need to instruct prospective jurors to ensure that defendants receive a fair trial. Then, just to make sure trial courts understood *exactly* what admonitions to give to prospective jurors, the supreme court promulgated Rule 431(b) in 2007, in which it explicitly set forth the precise language trial courts should use to ensure that prospective jurors 'understand and accept' the *Zehr* principles. Yet, here we are, 36 years after *Zehr* and 13 years after the supreme court promulgated Rule 431(b), and we are still dealing with a trial court's failing to do what the supreme court has directed.

We remind trial courts that supreme court rules are not suggestions, to be complied with when convenient or unless the trial courts believe they could better explain these fundamental principles to the jurors than Supreme Court Rule 431(b) does.

They can't." (Emphases in original.)

¶ 36 Our recommendation to trial courts is to laminate the *Zehr* principles—with notes

and reminders about how to properly read them—and place them at the bench prior to trial so that admonitions to prospective jurors will be error-free.

¶ 37    B. Defense Counsel Was Not Ineffective Regarding IPI Criminal No. 3.11

¶ 38    On appeal, defendant first argued that the trial court incorrectly read IPI Criminal No. 3.11; however, in defendant's reply brief, defendant acknowledged, "Upon [further] examination, however, appellate counsel realized that she misstated the error, as the trial court read the erroneous instructions exactly as defense counsel had submitted them." We accept counsel's concession. However, defendant maintains that she received ineffective assistance of counsel because trial counsel submitted an erroneous version of IPI Criminal No. 3.11 that omitted the language regarding written or signed inconsistent statements being admissible as substantive evidence.

¶ 39    1. *The Law Regarding Ineffective Assistance of Counsel*

¶ 40    All defendants enjoy the constitutional right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Pope*, 2020 IL App (4th) 180773, ¶ 61, 157 N.E.2d 1055.

¶ 41    To establish deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *Id.* ¶ 62. It is not sufficient for a defendant to show that counsel's representation was imperfect because the constitution guarantees only a reasonably competent counsel. *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Instead, a defendant must show counsel's representation undermined the proper functioning of the adversarial process to

such an extent that the defendant was denied a fair trial. *Id.* (citing *Strickland*, 466 U.S. at 686).

¶ 42        To show prejudice, a defendant must demonstrate "that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767 (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the prongs precludes a finding of ineffectiveness." *People v. Simpson*, 2015 IL 116512, ¶ 35, 25 N.E.3d 601.

¶ 43                              2. *This Case*

¶ 44        Defendant pleads herself out of court.

¶ 45        Defendant says in her reply brief, "[Officers Sparling and Troglia] wrote down their statements, and *acknowledged* that the reports that defense counsel showed them were, in fact, the ones that they had written." (Emphasis added.) The instruction the trial court read to the jury included that the inconsistent statement may be considered as substantive evidence if "the statement narrates, describes or explains an event or condition the witness had personal knowledge of, and the witness *acknowledged* under oath that he made the statement." (Emphasis added.) In other words, the trial court instructed the jury that it was to consider those inconsistent statements as substantive evidence. Because the result was the same—the jury was instructed that it should consider the evidence without limitation—no possible prejudice exists. In passing, we note that in *People v. Donlow*, 2020 IL App (4th) 170374, ¶¶ 66-76, this court held that the instruction defendant claims the trial court did not comply with was not a correct statement of the law and should not have been given.

¶ 46        C. The Trial Court's Instruction Regarding Jury Communications Was Not Error

¶ 47 Last, defendant argues that the trial court plainly erred when it instructed the jury that it could ask the court no questions during deliberations. However, this argument is based on a faulty premise because the jurors were not told they were forbidden to ask questions of the court. Instead, the court instructed the jury as follows:

> "Members of the jury, you are in the care of Paul, who is my bailiff. Paul has been instructed by this Court not to permit any person to speak or to otherwise communicate with you on any subject with the trial except with the permission of the court. I am directing Paul not to communicate with you on any subject with the trial and I direct you not to ask him any questions pertaining thereto. When you have reached your verdict, notify Paul, who will then inform the court."

¶ 48 The trial court merely instructed the jury to not ask questions or otherwise communicate with the *bailiff* about the trial. This instruction is accurate because the bailiff should not be involved in jury deliberations. The notion that the jurors would have believed that they could not communicate with the court is belied by the fact that they were told that (1) they may not speak with any other person "except with permission of the court" and (2) upon reaching a verdict, they should "notify Paul who will then inform the court." The instruction regarding obtaining permission from the court indicated that communication with the court was acceptable. The verdict instruction also showed that communication through the bailiff to the court was acceptable. Because the trial court did not tell the jury it may not ask questions of the court, the error alleged by defendant simply does not exist.

¶ 49                                    III. CONCLUSION

¶ 50 For the foregoing reasons, we affirm the trial court's judgment.

¶ 51 Affirmed.

- 12 -